(No. 13544.—Judgment reversed.)

THE PEOPLE *ex rel.* Grant Childress, County Collector, Appellee, *vs.* THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

*Opinion filed June 22, 1921.*

1. TAXES—*when a mandamus proceeding to compel issuing of bonds does not estop tax-payer from objecting to collection of tax.* A proceeding for a writ of *mandamus* to compel the issuing of bonds and to declare valid the election authorizing the tax to pay the bonds to be issued for constructing gravel roads, begun as a friendly suit by certain citizens and public officials, will not estop a tax-payer who was not a party thereto from filing objections to the collection of the tax, especially where the judgment for *mandamus* was entered subsequent to the filing of the certificates in the county clerk's office, on which the tax in controversy was extended.

2. ELECTIONS—*ballots in election authorizing hard roads tax must be indorsed as required by section 14 of Ballot law.* Ballots used in an election authorizing a direct annual tax for the purpose of constructing gravel roads must be indorsed as required by section 14 of the Ballot law, and where none of the ballots in such election contain the required indorsement designating the particular polling place for which the ballots are prepared the tax is not legally authorized, as section 26 of the statute provides that no ballot without the official indorsement shall be counted.

APPEAL from the County Court of Coles county; the Hon. JOHN P. HARRAH, Judge, presiding.

JOHN G. DRENNAN, for appellant.

EMERY ANDREWS, State's Attorney, (T. N. COFER, and CHARLES C. LEE, of counsel,) for appellee.

CHARLES H. FLETCHER, State's Attorney, for appellee on rehearing.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the county court of Coles county overruling objections filed by appellant to a certain tax levied in the town of Pleasant Grove, in said

county, following a vote taken at a special election held in said town July 31, 1919, authorizing a direct annual tax for five years for the purpose of constructing gravel roads in said town, and to a certain tax levied in said town to pay principal and interest on certain road bonds, alleged to have been authorized at the same election.

Counsel for appellee most earnestly argue that appellant is estopped by certain *mandamus* proceedings had in the circuit court of Coles county from objecting to the taxes in question. It appears from the record that certain citizens of said county by their solicitor filed an amended bill praying that the special election held as to said bonds should be held valid and that the commissioner of highways of said town proceed to issue the bonds, and that an injunction might be issued against certain town officials from interfering with the sale and disposition of the same and from the application of the proceeds of the sale of the said bonds to the making of the improvement. A demurrer was filed by certain of the defendants to the amended bill and the bill was dismissed, and the cause was then by leave of court transferred from the chancery side thereof to the law side, and a petition for *mandamus* was filed therein in said court praying that the officials of said town (naming them) should proceed to issue, sell and dispose of the bonds for the purpose of constructing the hard road in said town and to do all the acts and things necessary for the speedy construction thereof. The original amended bill of complaint in the chancery suit was filed to the January term, 1920, of the circuit court, and later, during the same term, was converted into this *mandamus* suit. As certain new defendants were brought in during the term they could not have been legally summoned during that term but must have entered their appearance. Joint and several answers were filed by the commissioner of highways and the town clerk of the town, admitting the allegations of the petition for *mandamus* to be true except that part charging that

they had neglected and refrained from selling and disposing of the bonds so voted at the special election, as set up in the petition for *mandamus,* and further stating that they had advertised with reference to the selling of the bonds and that the Harris Trust Company offered the best bid. The answer then stated that certain persons who had been made defendants in the chancery proceedings had announced that they expected to contest the validity of the bonds, and that therefore the town officials had not sold or issued or disposed of said bonds or let any contracts upon the roads sought to be built thereby; that defendants and the town officials are ready and willing to issue the bonds and let contracts for the work when they can legally do so and when all legal objections are removed so that purchasers will buy the bonds. The circuit court thereafter in said *mandamus* proceedings entered an order granting the relief prayed for and directing the issue of the bonds.

It seems apparent from the record that the *mandamus* proceeding was a friendly suit. The original bill of complaint in chancery was brought by a certain solicitor, and the same solicitor filed the amended bill of complaint and the petition for *mandamus* in the circuit court in behalf of petitioners in the *mandamus* suit. It would appear from the record that the public officials who joined in the petition for *mandamus* can hardly be held to be representatives of the public and have precluded appellant, the Illinois Central Railroad Company, and other tax-payers, by the *mandamus* proceeding, from filing objections to the payment of these taxes for the bonds for the building of said roads. In *Lindsay* v. *Allen,* 112 Tenn. 637, it is said: "While it is proper and just that even the rights of the public of and concerning any special matter should be concluded by one fair litigation in which the matters involved were faithfully presented and considered, it should be emphasized that the litigation must be *bona fide,* fair and honest from the beginning to the end. Those who assume, as citizens and

tax-payers, to stand forth as the champions of public rights and the conservators of the interests of all other citizens and tax-payers standing in the like case, must discharge their voluntary trust with candor and with such reasonable skill as to enable the court to see that there has been no such gross negligence in the conduct of the cause as would be equivalent to a fraudulent surrender of the rights involved in the controversy and no such * * * abandonment of acquired advantages as would justly sustain an imputation of fraudulent purpose or gross incompetency on the part of those in charge of the public's case. In short, before the rights of the public are concluded there must be a reasonably fair presentation of the case to a court of competent jurisdiction and a consideration and determination of the matter by the court."

Certain of the tax-payers who it is shown by the bill in chancery and *mandamus* proceedings were objecting to the payment of these taxes, while made parties to the original and amended bills of complaint were not made parties to the *mandamus* suit. We do not think, under this record, that appellant, who was not a party to any of those proceedings, as to the bill in chancery or the *mandamus* suit, can be held by this friendly suit to be precluded from filing objections to the payment of these taxes. Moreover, regardless of whether or not this objection should be binding as the *mandamus* suit was a friendly proceeding, we do not think the town officials by the *mandamus* proceedings could preclude the property owners by entering their appearance in the *mandamus* proceedings and allowing a writ to issue, so as to bind appellant and other tax-payers who wanted to contest the validity of the taxes.

Under the reasoning of this court in *People* v. *Chicago, Burlington and Quincy Railroad Co.* 247 Ill. 340, we do not think the tax-payers could be bound by litigation in which the town officials, only, were made parties. In that case it was argued that the litigation in which certain

county officials were made parties did not bind the tax-payers who were interested in the same litigation. It was there said (p. 344) : "It is necessary, however, to the application of the doctrine of *res judicata,* that the appellee was a party to the *mandamus* suit in which the judgment was rendered or in privity with a party thereto. The appellee was not a party to the record in the former proceeding and was in no way connected with it, and there is no privity between the clerk and the appellee. There has been no succession by appellee to rights of property adjudicated or affected in the *mandamus* proceeding and no mutual or successive relation to such rights. The appellee has derived nothing through the clerk, but it is contended that it was represented in the *mandamus* suit by the clerk and was therefore a party to that suit by representation. There are many cases where persons, although not parties to the record, are represented by such parties and their rights fully protected, but the clerk was in no proper sense a representative of the tax-payers, whose rights were not derived through him or dependent upon his acts, which are purely ministerial. Persons who are not parties to the record may also be concluded by a suit in the name of other persons of the same class, such as tax-payers of the town who bring a suit against the town on behalf of themselves and other tax-payers, in which the merits of the controversy are decided. * * * There are also cases where the rights of an individual are dependent upon the rights of a municipality and can only be derived and held through such municipality, and in such cases the individual is concluded by a judgment against the municipality. * * * Where a right is asserted against a municipality and a judgment is recovered it is binding on tax-payers although they are required, as individuals, to pay the judgment, but a decree enjoining the collection of a tax to pay a demand against a town in a suit by tax-payers against the town is not *res judicata* against the holder of the demand who is

not a party to the suit. (*Town of Lyons* v. *Cooledge,* 89 Ill. 529.) The interest of the holder of the demand is adverse to that of the town and the tax-payers, and he is not represented by either in a litigation between them. This case does not come within any recognized rule of representation of one not a party to the record." The same doctrine and conclusion were approved by this court in *People* v. *Chicago and Alton Railroad Co.* 247 Ill. 373. Applying that same reasoning and the rule there laid down to the *mandamus* proceedings in the circuit court, it must be held that the *mandamus* litigation did not operate as an estoppel.

There appears to be another reason why the proceedings in the *mandamus* case cannot be held as an estoppel. The order for the writ of *mandamus* was entered at the January term, 1920, of the circuit court of Coles county, while the certificates filed in the county clerk's office, on which the tax to pay the bond interest and the special tax were extended, were filed on September 3, 1919, several months before the judgment in the *mandamus* case was entered. It is on those certificates filed prior to the judgment of *mandamus* that the tax in controversy was extended. A judgment in the *mandamus* case subsequent to the entry of these certificates for taxes levied cannot be held to be an estoppel against the taxes theretofore levied. Beyond question appellant is not estopped from filing these objections to the payment of the taxes by the litigation in the *mandamus* proceedings.

At the special election held in the town of Pleasant Grove for the levying of taxes and the authority to issue bonds there were two polling places, the one for precinct No. 1, or the west precinct, being at Jordan Haddock's undertaking room, and the one for precinct No. 2, or the east precinct, being at J. H. Snowden's elevator office, both in Lerna, Illinois. The ballots used at the special election where the taxes here involved were alleged to be authorized had this indorsement on the back thereof: "Men's official

ballot, township of Pleasant Grove, county of Coles and State of Illinois, special election 31st day of July, 1919.— Joseph A. Hardwick, Town Clerk." Separate ballots were provided for the women, all containing the same indorsement, except that the word "women's" was substituted for the word "men's." The notice of the special town election specifically stated that the election would be held at two polling places, describing them. Both the polling places were used at said election and separate returns were made for each.

Section 14 of the Australian Ballot law (Hurd's Stat. 1917, p. 1345,) provides that certain things shall appear on the outside of the ballot to be voted at such an election, followed by the designation of the polling place for which the ballot is prepared, the date of the election and a *fac simile* of the signature of the clerk or other officer who has caused the ballots to be printed. There was no attempt to designate on the back of these ballots the two separate polling places. The ballots used, as we understand the record, in both places were identical, without reference as to which was to be used in the respective polling places. Section 26 of the Ballot law provides that "no ballot without the official indorsement shall be allowed to be deposited in the ballot-box, and none but ballots provided in accordance with the provisions of this act shall be counted." Under the holding of this court these sections of the Australian Ballot law are mandatory. (*People* v. *Snedeker,* 282 Ill. 425; *People* v. *Bushu,* 288 id. 277.) It follows that none of the ballots cast at this special election either for the taxes or the bond issue were valid, and therefore neither tax can be sustained as legally authorized.

As the taxes are invalid for the reasons already stated, we are not required to discuss the other questions raised in the briefs as to the validity of the taxes or the bonds.

The judgment of the county court is reversed.

*Judgment reversed.*