GERALD L. RATIGAN ET AL., APPELLANTS, v. HERBERT DAVIS ET AL., APPELLEES.

122 N. W. 2d 12

Filed June 7, 1963. No. 35456.

Haney, Walsh & Wall, for appellants.

William R. King and Seymour L. Smith, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

Plaintiffs brought this action for themselves and all others similarly situated in School District No. 66, . Douglas County, Nebraska, and School District No. 54, Douglas County, Nebraska, who reside within the corporate limits of the city of Omaha, Nebraska, to enjoin the county treasurer of Douglas County and others from collecting taxes assessed against their property within said school districts and within the city limits of Omaha for the benefit of the municipal university of the city of Omaha. The trial court sustained general demurrers to the petition. Plaintiffs stood on their petition and the action was dismissed. Plaintiffs have appealed to this court.

The petition shows that plaintiffs reside in, own property in, and are electors of school district No. 66, and within areas within said district which has been annexed to and become a part of the city of Omaha. By authority of section 14-1301, R. R. S. 1943, the municipal university of the city of Omaha was established.

Section 14-1305, R. R. S. 1943, provides for a board of regents of nine members with staggered terms of 4 years, such members to be selected by the board of education of the city of Omaha. By section 14-1317, R. R. S. 1943, the board of regents is authorized to certify the amount of the levy to the city council of the city of Omaha to be levied upon all tangible property within the city of Omaha for the support of the municipal university. The contention here made is that, as the petitioners reside and own property within the city of Omaha but do not reside or own property within the school district of Omaha, and as the regents of the municipal university are selected by the school board of the school district of Omaha, the petitioners are being taxed without representation and in violation of various sections of the state and federal Constitutions.

Plaintiffs assert that the fixing of the tax to be levied violates the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States. They assert also that the levying of the tax violates the due process clause of the Nebraska Constitution, Article I, section 3, Constitution; the special privileges or immunities clause, Article I, section 16, Constitution; the no discrimination clause, Article I, section 25, Constitution; the free elections clause, Article I, section 22, Constitution; and the definition of electors clause, Article VI, section 1, Constitution.

The board of regents has certified a levy on all the tangible property within the city limits for the year 1962, including the portions of school districts Nos. 66 and 54 that are within such city limits. Plaintiffs concede that at the time when the city and the school district of Omaha were coextensive in their territorial limits, no question of unconstitutionality existed. It is asserted that the annexation by the city of the lands in school districts Nos. 66 and 54 has subjected existing statutes to attack for unconstitutionality, as hereinbefore set forth.

The act authorizing the establishment of the munici-

pal university was enacted in 1929. At that time its board of regents was authorized to certify a tax levy not exceeding one mill on the dollar upon the assessed value of all taxable property in the city. The act was amended in 1951 to provide that by a vote of the qualified electors of the city the levy could be increased to two mills on the dollar. By a vote of the electors of the city, prior to the annexation of the areas in school districts Nos. 66 and 54, the maximum levy was increased to two mills. In Carlberg v. Metcalfe, 120 Neb. 481, 234 N. W. 87, the power of the board of regents to certify the amount of the tax levy for the support of the university was challenged as unconstitutional. The court held that, even if the regents levied the tax and the function of the city council was administrative only, the electors of the city having consented to the delegation of the power to tax to the board of regents, the delegation of power could not be questioned and that the act was constitutional.

The maxim that taxation without representation, or taxation without the consent in some form of those who are to be taxed, is relied on to sustain the position of the plaintiffs. Maxims of government, not contained in the Constitution, are given a very restricted meaning. It does not mean, as many seem to think, that no person can be taxed unless, in the body that determines the amount of the tax to be levied, he is represented by someone for whom he has a right to vote. It has never had such a legal meaning. So construed, a large portion of the people of the state would be exempted from the payment of taxes, including infants, nonresidents, and disqualified voters. Representation is not made the basis of taxation. The principle involved is well stated in the early case of State ex rel. Bulkeley v. Williams, 68 Conn. 131, 35 A. 24, 48 L. R. A. 465, wherein it is said: "The defendant urges that taxation and representation are indissolubly connected by the underlying principles of free government, and that this (the commis-

sion which directs the affairs of the Bridge District and makes requisitions on the towns for such funds as it deems necessary, not having been selected by them) is a sufficient defense against the payment of the order which has been drawn upon him, since it can be paid only out of moneys raised by town taxation. * * * Taxes can, indeed, under our system of government, only be imposed by the free consent of those who pay them, or their representatives; and for purposes which they approve. But the inhabitants of these towns were represented in the General Assembly, by which the laws now brought in question were enacted. The legislative power, after defining the general purposes of taxation, to confer upon local public corporations the right to determine the amount of the levy within the territory under their jurisdiction, is unquestionable; and in its exercise it is immaterial whether the corporations, to which that function is entrusted, or between which it is shared, be called counties or towns, school districts or bridge districts. When a levy is voted, the action is corporate action, deriving its obligatory force wholly from the authority of the State." See, also, Clark v. Leathers, 9 Ky. L. 558, 5 S. W. 576; Gadd v. McGuire, 69 Cal. App. 347, 231 P. 754; Kocsis v. Chicago Park Dist., 362 Ill. 24, 198 N. E. 847, 103 A. L. R. 141.

It seems clear under the foregoing holdings, since plaintiffs were represented in the Legislature that enacted the law, that they had the representation required by the maxim of no taxation without representation. The plaintiffs rely on several cases including State ex rel. Harte v. Moorhead, 99 Neb. 527, 156 N. W. 1067; State ex rel. Wright v. Brown, 131 Neb. 239, 267 N. W. 466; Summerville v. North Platte Valley Weather Control Dist., 170 Neb. 46, 101 N. W. 2d 748; and Anderson v. Carlson, 171 Neb. 741, 107 N. W. 2d 535. These cases deal with the organization of districts and the failure of the organizing authority to follow constitutional requirements. They are distinguishable from the case before

us which deals only with the validity of a tax in an already existing taxing district. We quite agree, as we have consistently held, that the authority which is required to establish districts, whether they be for election, taxation, or other governmental purposes, must comply with the uniformity, equality, and due process provisions of the state and federal Constitutions. But we have no such problem here, except incidentally. Whether or not the tax levy here made is valid is dependent on entirely different considerations. The first consideration is, of course, that representation is not a condition precedent to the right to tax.

The briefs of the parties concede that the electors of the city of Omaha authorized the increase of the levy for the support of the university to two mills at a time when the city limits were coextensive with those of the school district of the city of Omaha and before the areas in school districts Nos. 66 and 54 were annexed to the city. No complaint is made as to the validity of the tax at that time. When the areas in school districts Nos. 66 and 54 were annexed, they did not ipso facto become a part of the school district of Omaha by virtue of section 79-1002, R. S. Supp., 1961.

The Legislature has plenary power over the boundaries of school districts. Nickel v. School Board of Axtell, 157 Neb. 813, 61 N. W. 2d 566. It has complete power over the organization, function, and finances of a school district. Schutte v. Schmitt, 162 Neb. 162, 75 N. W. 2d 656. It may establish different qualifications for electors of school districts. Farrell v. School Dist. No. 54, 164 Neb. 853, 84 N. W. 2d 126. It also has plenary power over all municipal corporations. Except as limited by the Constitution, its power over municipalities is absolute. The question here presented is altogether different from local districts set up and administered by private individuals where the property owner has a right to be heard as a matter of due process, such as in the case of Anderson v. Carlson, *supra*.

Upon the annexation of the areas in school districts Nos. 66 and 54 to the city of Omaha, the property in the areas annexed became liable for all the obligations of the city, including the two-mill levy for the support of the municipal university. This is made abundantly clear in Hustead v. Village of Phillips, 131 Neb. 303, 267 N. W. 919, wherein it is said: "As to the general issues involved in this case, it may be said that, in the absence of specific constitutional limitations, the power of the legislature to change the boundaries of municipal corporations, and to apportion the municipal debts upon such change of boundaries, is absolute. When the act or statute authorizing a change of boundaries is silent as to apportionment of municipal debts, the territory embraced within the new boundaries becomes liable for all prior debts, and the territory excluded from the new boundaries is forever released from all municipal debts." See, also, Lynch v. Howell, 165 Neb. 525, 86 N. W. 2d 364. The Hustead case is one where electors had no vote as to whether or not the boundaries were to be changed. It logically follows that where a two-mill levy was approved by the electors of the city for the support of the municipal university before the annexation of the areas in school districts Nos. 66 and 54, the property in the latter districts became burdened with the tax the same as any other indebtedness of the city. The fact that electors in the annexed areas do not have a voice in the selection of those charged with the function of certifying the amount of the validly imposed mill levy cannot have the effect of voiding the tax properly and legally imposed on tangible property in the annexed areas. Under such circumstances the electors in the annexed areas can no more question the validity of the mill levy than can an infant, a nonresident, or a disqualified elector.

It may be that the Legislature has a function to perform in order to avoid other situations that may arise with reference to constitutional requirements, but under

the facts presented in the instant case we find no constitutional provision, federal or state, having the effect of voiding the two-mill tax levy on the tangible propery within the annexed areas.

We do not deem it necessary to discuss other questions raised. No constitutional provision stands as a bar to the levy of two mills on the dollar on the assessed value of the tangible property in the annexed areas for the support of the municipal university. The trial court correctly sustained general demurrers to the petition of the plaintiffs and its judgment is affirmed.

AFFIRMED.