LURIE, ETC. *v.* CITY OF INDIANAPOLIS ET AL.

[No. 30,488. Filed May 26, 1964. Dissent filed July 1, 1964.]

*Clyde L. Peterson, Douglas J. Hill* and *Cadick, Burns, Duck & Neighbours,* of counsel, all of Indianapolis, for appellant.

*Michael B. Reddington,* Corporation Counsel, and *John J. Dillon,* City Attorney, of Indianapolis, for appellee, City of Indianapolis.

*John P. Korbly,* of Indianapolis, for appellee, Board of Park Commissioners.

*Richard Hartman,* of Indianapolis, for Auditor of Marion County.

*Harry T. Ice, David N. Brewer, Robert D. Risch, Robert D. McCord,* and *Ice, Miller, Donadio & Ryan,* of counsel, all of Indianapolis, amicus curiae.

LANDIS, J.—Appellant brought this action to enjoin appellees from levying any tax on appellant's property or issuing bonds of the Indianapolis Park District as extended or taking any other action which would facilitate the levy of such a tax or the issuance of such bonds, purportedly authorized by certain sections of ch.

144 of the Acts of 1919, as amended by ch. 279 of the Acts of 1961,[1] and ch. 396 and ch. 397 of the Acts of 1963.[2]

The issues were formed by appellant's complaint contending the above statutes were unconstitutional and appellees' answers contending to the contrary. The lower court found for appellees and entered judgment in their favor from which determination appellant appeals to this Court.

Appellant's first contention on this appeal is that she is denied equal privileges guaranteed to her by Art. 1, §23 of the Indiana Constitution[3] and the fourteenth (14th) amendment of the U. S. Constitution[4] by ch. 279 of the Acts of 1961, which purports to authorize the common council of the city of Indianapolis to levy taxes on appellant's property located outside the city of Indianapolis.

The above statutes purport to expand the area of operations of the park districts in cities of the first class from the territory within the city of Indianapolis to all the territory within Marion County. The purpose

---

1. Burns' §48-5501a (1963 Repl.), Acts 1961, ch. 279, §1, p. 641; Burns' §48-5504 (1963 Repl.), Acts 1961, ch. 279, §3, p. 641; Burns' §48-5528a (1963 Repl.), Acts 1961, ch. 279, §7, p. 641, 1961, ch. 279, §8, p. 641, 1963, ch. 397, §3, p. 1101.

2. Burns' §48-5501b (1963 Repl.), Acts 1963, ch. 396, §1, p. 1100. Burns' §48-5528a (1963 Repl.), *supra*, Acts 1963, ch. 397, §3, p. 1101.

3. Art. 1, §23 of the Indiana Constitution provides:

"The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

4. Sec. 1 of the fourteenth (14th) amendment to the U. S. Constitution provides:

". . . No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

is conceded to be to provide for a county-wide park system, in light of the obvious expansion of metropolitan Indianapolis beyond the boundaries of the city.

Appellant contends, however, those portions of the Act are unconstitutional which purport to authorize the common council of the city of Indianapolis to levy taxes on appellant's property located outside the city.

Burns' §48-5504, 1963 Repl. (Acts 1919, ch. 144, §4, p. 639; 1933, ch. 110, §1, p. 698; 1961, ch. 279, §3, p. 641, *supra*), in this respect provides as follows:

"All the territory included within the corporate limits of any such city of the first class and on and after January 1, 1963, *all area in the county in which such city is located to the extent provided by section 1A [§48-5501a] of this act shall constitute a taxing district for the purpose of levying special benefit taxes for park purposes* as provided in this act [§§48-5501—48-5531]. The term 'park purposes' as used in this act shall be considered and held to cover and include parks, boulevards, pleasure drives, parkways, wheelways, park boulevards, bridlepaths, playgrounds, playfields, bathhouses, comfort stations, swimming pools, community centers, recreation centers and the establishment, the equipment and operation thereof. Except for park districts in cities of the second class that have adopted this act but have not elected to extend its boundaries pursuant to section 1A [§48-5501a], *references in this act to park district or to or concerning territory within a city of the first class shall be construed on and after January 1, 1963, to refer to all area within the park district as its boundaries are extended beyond the corporate limits of the city* by section 1A [§48-5501a] of this act unless the context otherwise requires, . . . ." (Emphasis added.)

The foregoing statute thus merely extended the boundaries of the Indianapolis Park District. The power to levy taxes was continued in the common council, acting as an administrative agency.

Appellant has also attacked the constitutionality of Burns' §48-5528a, 1963 Repl. (Acts 1919, ch. 144, §25A as added by Acts 1961, ch. 279, §7, p. 641, Acts 1963, ch. 397, §3, p. 1101, *supra*), authorizing the city council upon request of the board of park commissioners, to adopt an ordinance establishing a cumulative building and sinking fund and to levy annual taxes for such purposes, viz:

> "The board of park commissioners of any such city, in order to raise money for any of the purposes for which bonds may be issued pursuant to section 25 [§48-5525] of this act, is authorized to request the common council of such city to adopt an ordinance establishing *a cumulative building and sinking fund* in the manner hereinafter provided. . . . After approval by the state board of tax commissioners, *the common council of the city shall levy annually thereafter, for a period of twelve [12] years, the amount of tax set forth in the ordinance* and approved by the state board of tax commissioners, but in no event exceeding ten cents [10¢] on each one hundred dollars [$100] of taxable personal and real property within the park district: Provided, that if the common council deems it advisable to do so, it may cause such annual levy at any time thereafter to be reduced by adoption of an ordinance; or ten [10] or more taxpayers in any such park district who will be affected by such tax, may file with the county auditor of the county in which such park district is located, not later than August 1 of any year, a petition for reduction of said levy setting forth their objections thereto. . . ." (Emphasis added.)

Appellant also refers to Burns' §48-5508, 1963 Repl., (Acts 1919, ch. 144, §8, p. 639; 1920 (Spec. Sess.), ch. 32, §1, p. 105), giving the city council authority to pass an ordinance authorizing the sale of park lands, the proceeds of which may be used by the board of

park commissioners as it may deem for the best interests of the city of Indianapolis, viz:

"If such a board of park commissioners in any city of the first class should wish to sell any part of the park lands now owned by such city or that may hereafter be acquired, it is hereby authorized to prepare an ordinance authorizing such sale and submit the same to the city council. If the council shall pass such ordinance, such lands shall be sold as other lands of the city are sold, and the proceeds of such sale shall be credited to the department of public parks and expended in the improvement of the remaining park lands or in the purchase of other lands for park purposes, as such board may deem for the best interests of the city. . . ."

It is appellant's argument that extending the taxing power of the Indianapolis city council to include property such as that of appellant beyond the corporate limits of such city in Marion County, is taxation without representation; that appellant has no voice, direct or indirect, in choosing the members of such council who are elected solely by the voters of said city, and that appellant would not receive equal protection of the laws with the residents of the city of Indianapolis.

Appellant relies to a considerable extent upon the out of state decisions in: *Town of Oneida* v. *Hardwood Flooring Co.* (1935), 169 Tenn. 449, 88 S. W. 2d 998; *State ex rel. Hinson* v. *Nickerson* (1916), 99 Neb. 517, 156 N. W. 1039; and *Klich et ux.* v. *Miami Land & Development Co.* (1939), 139 Fla. 794, 191 So. 41, and statements appearing in 64 C. J. S., Municipal Corporations, §2003, p. 695; 38 Am. Jur., Municipal Corporations, §392, p. 81. However, these authorities do not appear applicable to the case at bar as they relate to situations where the attempt to levy on

property outside the taxing unit was caused by a change in boundaries, disannexation, or a void annexation.

On the other hand, in support of appellees' position, it is pointed out that a statute similar to that involved in this case was passed by the legislature in 1917 which provided for the creation of sanitary districts and authorized the levy of taxes by a city council or board where the land outside the city was benefitted by the taxes levied. This Court in *State Board, etc.* v. *State ex rel.* (1926), 198 Ind. 343, 153 N. E. 404, 153 N. E. 576, in considering such statute, recognized the duty of the state board of tax commissioners to perform its duties with reference to the taxes levied by the Indianapolis city council on property located (outside the city) in the town of Woodruff Place, for the operation of the Indianapolis sanitary district. Such taxes under the present law upheld in *Archer, Jr., etc. et al.* v. *City of Indpls., etc. et al.* (1954), 233 Ind. 640, 122 N. E. 2d 607, are now levied on property outside the city in areas annexed to the district by the board of sanitary commissioners, the board being appointed by the mayor of the city of Indianapolis. In *City of Indianapolis* v. *Bryan* (1919), 188 Ind. 586, 125 N. E. 38, we also upheld the constitutionality of an act providing for levying by the board of park commissioners of the city of Indianapolis of assessments outside the city for benefits to such property, such board having been then appointed by the mayor of the city of Indianapolis.

We believe it should be further pointed out that this Court in the early case of *Conwell* v. *The President and Trustees of Connersville* (1856), 8 Ind. 358, held an act not to be unconstitutional which provided that all persons residing within two hundred (200) yards of the corporation line should be taken as residents

within the limits of the corporation for purposes of taxation. See also: *Visalia Savings Bank* v. *Visalia* (1908), 153 Cal. 206, 94 Pac. 888; *Wible* v. *City of Bakersfield* (1919), 42 Cal. App. 77, 183 Pac. 291; *Ratigan* v. *Davis* (1963), 175 Neb. 416, 122 N. W. 2d 12.

In regard to appellant's argument of taxation without representation, we have heretofore held that the levying of local taxes is *not a local legislative function* administered by officers elected locally but amounts only to administrative action which the state can delegate to any unit. See: *Zoercher* v. *Agler* (1930), 202 Ind. 214, 172 N. E. 186, 172 N. E. 907, 70 A. L. R. 1232. Appellant is represented in the General Assembly and is therefore not subject to taxation without representation. See: 1 Cooley, Taxation, §21, p. 84.

It is well settled that the wisdom of legislative action in the field of taxation and assessment is not a matter the courts may consider as long as the legislature violates no constitutional provision. *Western Adj. & Insp. Co.* v. *Gross Inc. Tax Div.* (1957), 236 Ind. 639, 142 N. E. 2d 630; *Sun Oil Co.* v. *Gross Inc. Tax Div., etc.* (1958), 238 Ind. 111, 149 N. E. 2d 115.

While it is true the common council of the city of Indianapolis could not levy taxes on property outside the city for general city purposes which in no way benefited the outside property, this is because the General Assembly could neither authorize such a local tax nor levy it directly. However, when the taxes levied are for the benefit of the entire district, are levied on a uniform and equal basis throughout the entire district, and the money expended by a board in which all the taxpayers of the district have representation, there is no opportunity of dis-

crimination against the taxpayers owning property outside the city by the levy of such taxes.

No discrimination is here contended by appellant in the assessment process nor does any exist in the process of spending of tax money for the purchase or improvement of land for park purposes for as the statute provides all taxpayers in the county are represented on the board of park commissioners.[5] All taxpayers of the district, including those outside the city may object to the tax rates set by the city council and require review by the state board of tax commissioners.[6]

We find appellant's contentions heretofore made to be without merit.

Appellant next contends that those portions of the Act purporting to authorize the board of park commissioners of the city of Indianapolis to levy special taxes on appellant's property located outside the city of Indianapolis, which will be used to pay for land acquisition and the principal and interest on bonds issued by the city of Indianapolis for park purposes violate Art. 1, §23 of the Indiana Constitution and the fourteenth (14th) amendment of the U. S. Constitution.

Appellant concedes the act does provide appellant some indirect representation in the administration of the park district, as extended, by means of appointments to the board of park commissioners by the Marion county council. Burns' §48-5501b, 1963 Repl. (Acts 1919, ch. 144, §1C, as added by Acts 1963, ch. 396, §1, p. 1100), provides:

5. Three members are appointed by the mayor of Indianapolis, and two by the Marion county council. Burns' §48-5501b, 1963 Repl., (Acts 1919, ch. 144, §1C, as added by Acts 1963, ch. 396, §1, p. 1100).

6. Burns' §64-1914, 1961 Repl., (Acts 1947, ch. 275, §1, p. 1097); Burns' §48-5528a, 1963 Repl. (Acts 1919, ch. 144, §25A, as added by Acts 1961, ch. 279, §7, p. 641; 1963, ch. 397, §3, p. 1101).

"Upon the extension of the boundaries of any park district of any city pursuant to section 1A [§48-5501a], the board of park commissioners shall consist of five [5] members. Three [3] members shall be appointed by the mayor of such city and two [2] members shall be appointed by the county council of the county in which such city is located. The members appointed by the county council shall be residents of the area of the park district outside the corporate boundaries of such city. . . . "

The powers given to the board of park commissioners in connection with the park district include the authority to acquire land for park purposes, the issuance of bonds to pay therefor or for improvement or construction provided for by the Act, authority to levy a special tax to pay for the acquisition of lands and the principal and interest on bonds received.[7]

Appellant challenges the finding of the legislature[8] that property outside the city of Indianapolis will be benefitted by existing improvements for which bonds have been issued but not yet paid, on the basis that at the time the improvements were made and the bonds issued, the improvements were for property located within the city of Indianapolis and for the benefit of Indianapolis residents.

The contention of appellant is that a tax is there-

---

7. Burns' §48-5516, 1963 Repl. (Acts 1919, ch. 144, §16, p. 639); Burns' §48-5525, 1963 Repl. (Acts 1919, ch. 144, §25, p. 639; 1920, Spec. Sess., ch. 42, §1, p. 140; 1927, ch. 251, §1, p. 732; 1961, ch. 279, §6 p. 641); Burns' §48-5527, 1963 Repl. (Acts 1919, ch. 144, §27, p. 639).

8. Burns' §48-5504, 1963 Repl., (Acts 1919, ch. 144, §4, p. 639; 1933, ch. 110, §1, p. 698; 1961, ch. 279, §3, p. 641), provides:

". . . Any area added to a park district pursuant to section 1A [§48-5501a] of this act is hereby deemed and declared to have received a special benefit from the new and existing park facilities of the park district equal to or exceeding the special taxes imposed on such area by this act in order to pay all or any part of the cost of such facilities."

by imposed upon her property outside the city which is particularly of benefit to the residents of the city of Indianapolis. Appellant's contention, however, is not supported by sufficient evidence that we may conclude the trial court abused its discretion in refusing to upset the legislative determination to the opposite effect. Moreover, it appears that the property of taxpayers in the annexed area is benefitted by all the park improvements previously made in the county, and such taxpayers should assume their share of the burden of paying for such improvements which benefit their property.

This Court has consistently applied this rule to annexations to municipal corporations and political subdivisions of the state: *The Lake Shore and Michigan Southern Railway Co.* v. *Smith, Treasurer* (1892), 131 Ind. 512, 519, 31 N. E. 196, 198; *Stilz* v. *The City of Indianapolis* (1882), 81 Ind. 582; *The City of Logansport et al.* v. *Seybold* (1877), 59 Ind. 225, and in our judgment it is applicable here. See also: *Kocsis* v. *Chicago Park District* (1935), 362 Ill. 24, 32, 198 N. E. 847, 852, 103 A. L. R. 141, 147; *Barnes* v. *Kansas City* (1949), 359 Mo. 519, 523, 222 S. W. 2d 756, 758, 10 A. L. R. 2d 553, 557; *Gernert* v. *City of Louisville* (1913), 155 Ky. 589, 590, 159 S. W. 1163, 1164, 51 L. R. A. (N. S.) 363, 366.

Appellant has also contended the Act is unconstitutional for the reason that the board of park commissioners remains principally an administrative body of the city of Indianapolis, and that while it does give appellant indirect representation upon the board, it also gives the mayor of the city of Indianapolis the power to decide any question upon

which a tie vote has been cast by the board.[9] When the legislature in the Act of 1963[10] provided a change in the membership of the board of park commissioners (increasing the board from four [4] to five [5] members) so as to provide representation on such board of all of the taxpayers of Marion County, we believe it removed any basis upon which appellant could properly here make complaint.

We are unable to find any merit to this contention of appellant.

Appellant has finally contended that the title to ch. 279 of the Acts of 1961 is defective in failing to express the subject of the Act and that §§1, 2, 7 and 8 of that Act and §§1 and 2 of ch. 397 of the Acts of 1963 fail to identify the original Act, as last amended, contrary to Art. 4, §19 of the Constitution of Indiana.[11]

The title to the 1961 Act (p. 641) is:

---

9. Burns' §48-5503, 1963 Repl., (Acts 1919, ch. 144, §3, p. 639), states in part:

". . . A majority of the members shall constitute a quorum, and no action of such board shall be binding unless authorized by a majority of the members, at a regular or duly called special meeting thereof. But, in case of a tie vote on any question, the mayor shall decide. . . ."

10. Acts 1919, ch. 144, §1C, as added by Acts 1963, ch. 396, §1, p. 1100 (Burns' §48-5501b, 1963 Repl.).

11. Art. 4, §19 of the Constitution of Indiana (as amended Nov. 8, 1960), provides:

"Every act, amendatory act or amendment of a code shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, amendatory act or amendment of a code, which shall not be expressed in the title, such act, amendatory act or amendment of a code shall be void only as to so much thereof as shall not be expressed in the title. The requirements of this paragraph shall not apply to original enactments of codifications of laws.

"Every amendatory act and every amendment of a code shall identify the original act or code, as last amended, and the sections or subsections amended shall be set forth and published at full length. The identification required by this paragraph may be made by citation reference."

"AN ACT to amend the law concerning the department of public parks in cities of the first class and in cities of the second class that adopt the first class city law in relation to extending the boundaries of the park district and the jurisdiction of the department of public parks of such cities, providing for increasing the number of members of board of park commissioners in connection with such extension, broadening the powers of the board of park commissioners, and authorizing the establishment of a cumulative building fund."

The title to the 1963 Act (p. 1101) is:

"AN ACT to amend an act entitled 'An Act concerning the "department of public parks" in cities of the first class, defining its powers and duties, creating a taxing district for park purposes, in each city of the first class, repealing conflicting laws, and declaring an emergency,' the same being Chapter 144 of the Acts of 1919."

Appellant has argued that the title to the 1961 Act is not broad enough to include the additional taxing jurisdiction given to the common council of cities of the first class which under such Act becomes county-wide.

The title to the 1961 Act is sufficient to indicate that the boundaries of the park district in cities of the first class and some second class cities are being extended, that the members of the board of park commissioners are being increased, that the board's powers are to be broadened, and that the establishment of a cumulative building fund is authorized. The common council previously had the power to levy a tax on all the property in the park district. When the district was extended, the tax authority automatically was thereby extended over the larger area. A title which carries in it an item indicating the ex-

tension of a taxing district, puts those on notice who rely on such a title that as a necessary consequence, the tax area is also increased and some agency must collect the tax. There is no question in this Act of establishing a new court or a new common council or a new legislative or administrative body. *State, P. R. R. Co. et al.* v. *Iroq. Cons. Dist. Ct. et al.* (1956), 235 Ind. 353, 133 N. E. 2d 848, is not applicable. We have frequently held a title need not be a complete index or a compendium, but that it sufficiently expresses a subject when upon a liberal construction it gives such notice as to apprise the legislators and the public of the general subject matter of the legislation. *Orbison* v. *Welsh, Governor et al.* (1962), 242 Ind. 385, 393, 179 N. E. 2d 727, 731; *Wright-Bachman, Inc.* v. *Hodnett* (1956), 235 Ind. 307, 317, 133 N. E. 2d 713, 717; *Albert* v. *Milk Control Board of Indiana* (1936), 210 Ind. 283, 288, 200 N. E. 688, 690.

Appellant has further complained that each section of the Acts of 1961 and 1963 does not cite the latest amendment to the original Act. However, each section of each Act refers to the original section as that section was last amended, thus directing the attention of any interested person to the last amendment of such section. This is actually the existing law being amended. A strict interpretation which would unnecessarily require that reference be made to some amendment to another section, which is not being amended, would not serve a useful purpose, but would only result in confusion and chaos and is not to be commended.

We find no substance to appellant's contention that the titles of the 1961 and 1963 Acts were constitutionally defective.

Judgment affirmed.

Arterburn and Myers, JJ., concur. Jackson, J., not participating. Achor, C. J., dissents.

## DISSENTING OPINION.

ACHOR, C. J.—In my opinion neither the parties nor this court in its majority opinion considered the really significant grounds upon which the statutes here placed in controversy [ch. 144 of the Acts of 1919, as amended by ch. 279 of the Acts of 1961, and ch. 397 of the Acts of 1963] would necessarily be considered unconstitutional if the issues were presented.

Supplemental footnote to majority opinion.

A dissenting opinion by Achor, C. J., on July 1, 1964, has been filed in this case placing reliance on the cases of *Cerajewski* v. *McVey* (1947), 225 Ind. 67, 72 N. E. 2d 650, 171 A. L. R. 723; and *Rappaport* v. *Dept. of Public Health* (1949), 227 Ind. 508, 87 N. E. 2d 77, 88 N. E. 2d 150, which held the additional taxing and hospital districts there created to be unconstitutional. The dissent further states such decisions ". . . are landmark cases which have been cited and relied upon in nearly every case wherein the constitutionality of a newly created taxing and bonding authority has been established . . .", specifically referring to: *Datisman, etc.* v. *Gary Public Library* (1960), 241 Ind. 83, 170 N. E. 2d 55; *Book* v. *Board of Flood Control Comrs. etc. et al.* (1959), 239 Ind. 160, 156 N. E. 2d 87; *Martin* v. *Ben Davis Conservancy Dist.* (1958), 238 Ind. 502, 153 N. E. 2d 125; *Protsman* v. *Jefferson-Craig Consol. School Corp.* (1953), 231 Ind. 527, 109 N. E. 2d 889; *Dept. of Pub. Sanitation* v. *Solan* (1951), 229 Ind. 228, 97 N. E. 2d 495.

(See note 5 of dissent.)

The facts however are otherwise as the *Datisman, Book, Martin,* and *Dept. of Pub. Sanitation* cases instead of relying on *Cerajewski* and *Rappaport,* distinguished them and held them not applicable. And in the remaining case, *Protsman,* reference is made to an interesting article appearing in 25 Indiana Law Journal at page 325, pointing up the problems posed by *Cerajewski* and *Rappaport,* and expressing criticism of those decisions.

Fortunately the well reasoned opinions of most Indiana decisions for many years have refused to extend the meaning of the debt limitation provision of the Indiana Constitution to prohibit the creation of new political subdivisons or the financing of local public improvements by bond issues paid for by assessments or special taxes. The common law imposed no debt limitation whatever, and we should not at this late date attempt to turn the clock backward by engrafting additional words into the debt limitation provision of the Indiana Constitution to make it more restrictive than at the time of its enactment.

This circumstance poses a serious question. Shall this court ignore the fact that appellant has failed to present these constitutional defects and hand down an opinion which presumptively sustains the constitutionality of the acts, or is there an obligation, under all the circumstances of this case, to recognize these constitutional deficiencies and remand the case to the trial court for a determination based upon these further considerations?

It is my opinion that, for the reasons hereafter stated, when considered together, this latter course of action is appropriate.

I. It seems apparent that this was a "friendly action" in which there was not a complete adversity of interest. The following facts which appear of record lead to this conclusion.

1. The plaintiff-appellant was a non-urban resident of Marion County, and, therefore, although she may have legally represented "all others similarly situated," as stated in her complaint, she did not in all respects represent the residents of the cities and towns in Marion County outside of the city of Indianapolis, who, in my opinion, have the greater cause to challenge the constitutionality of the act.

2. The appellant gave only partial consideration to the major grounds for challenging the constitutionality of the act in her brief, and gave no consideration to other grounds which *might* have been asserted.

3. The appellant did not file a reply brief to controvert the contentions asserted by appellees' brief.

4. Neither has appellant filed a petition for re-

hearing,[1] even though the majority opinion expressed the views of only three of the five members of this court.

II. This is not merely a controversy between private parties. Rather, the action is filed in the name of a single person as a class action. Thus it purports to present a valid and bona fide case on behalf of hundreds of thousands of people who presumably become bound by the judgment entered therein. Thus we here have a case of great public interest.

Admittedly amicable actions are generally to be encouraged, but "An amicable action in the sense in which these words are used . . . presupposes that there is a real dispute between the parties. . . . " 1 Anderson, Actions for Declaratory Judgments (2nd ed. 1951) §104, at 169. 1 Freeman on Judgments (5th ed. 1925) §511 at 1101 states:

" . . . And it has been held that the judgment in a 'friendly' mandamus suit by certain taxpayers and officers against town officers to compel the issuance of bonds is not conclusive upon taxpayers not parties thereto. . . ." [Citing *People ex rel Childress* v. *Illinois Cent. R. Co.* (1921), 298 Ill. 516, 131 N. E. 624.]

In the case of Illinois Cent. R. Co., *supra*, the court stated:

" 'While it is proper and just that even the rights of the public . . . should be concluded by one fair litigation, in which the matters involved were faithfully presented and considered, it should be

---

1. Had a petition for rehearing been filed, and the same denied, this opinion would ordinarily have been addressed to the denial of such petition for rehearing. However, under present circumstances, this opinion is written belatedly, in support of my dissent—my intention to do so having been originally indicated.

emphasised that the litigation must be bona fide, fair and honest from the beginning to the end. . . .'" [298 Ill. 516, 518-19, 131 N. E. at 625 (1921), portions of the court's quotation from *Lindsay* v. *Allen* (1904), 112 Tenn. 637, 82 S. W. 171.]

In what manner are the statutes in controversy violative of the constitutions of the State of Indiana and of the United States? The majority opinion of this court does not consider the fact that, under the statutes in question, the residents of the several municipal corporations within Marion County would be obliged to pay taxes for the operation of the enlarged city of Indianapolis park system; whereas, the residents of Indianapolis were not obligated to pay taxes for the separate park systems of the other several municipal corporations in the county.

Because of this very apparent unequal treatment which the statute would cause to be imposed upon the residents of these other cities and towns, which issue was not considered by the parties or in the majority opinion, I am of the opinion that the statute is violative of Art. 1, §23 of the Indiana Constitution[2] and the 14th Amendment to the U. S. Constitution.[3]

Furthermore, neither the parties nor this court gave consideration to the fact that statutes providing for the city of Indianapolis-Marion County park system purported to establish a taxing and bonding authority

---

2. "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." Art. 1, §23 Indiana Constitution.

3. ". . . No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Sec. 1, 14th Amendment to the U. S. Constitution.

which overlaps, and is in addition to, the park systems of the other municipal corporations in the county which are also authorized to tax and issue bonds, for the operation of their municipal park systems. This court has on two separate occasions been asked to rule on the validity of such statutes, and in each instance this court has held them to be in violation of the constitutional limitation upon bonded indebtedness as contained in Art. 13, §1 of the Indiana Constitution.[4] *Cerajewski* v. *McVey* (1947), 225 Ind. 67, 72 N. E. 2d 650; *Rappaport* v. *Dept. of Public Health* (1949), 227 Ind. 508, 87 N. E. 2d 77. These are landmark cases which have been cited and relied upon in nearly every case wherein the constitutionality of a newly created taxing and bonding authority has been established.[5] The failure of appellant to cite and rely upon these cases, which are directly in point, can be explained only in the light of the amicable character of this action.

The acts of the legislature creating new taxing and bonding authorities as devices to avoid the above constitutional debt limitation, the prior decisions of this court construing such acts, and the decision of this court in the instant case, present an interesting commentary.

4. "No political or municipal corporation in this State shall ever become indebted in any manner or for any purpose to an amount in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness; and all bonds or obligations in excess of such amount, given by such corporations, shall be void: Provided, That in time of war, .... " Art. 13, §1, Indiana Constitution.

5. *Datisman etc.* v. *Gary Public Library* (1960), 241 Ind. 83, 170 N. E. 2d 55; *Book* v. *Board of Flood Control Comm'rs etc.* (1959), 239 Ind. 160, 156 N. E. 2d 87; *Martin* v. *Ben Davis Conservancy District* (1958), 238 Ind. 502, 153 N. E. 2d 125; *Protsman* v. *Jefferson-Craig Consolidated School Corp.* (1953), 231 Ind. 527, 109 N. E. 2d 889; *Department of Public Sanitation, City of Hammond* v. *Solan* (1951), 229 Ind. 228, 97 N. E. 2d 495.

*Device One*: For the purpose of avoiding this constitutional prohibition, the legislature, with the approval of this court, has created many new municipal corporations, which have been authorized to perform a governmental function which had previously been performed by a then existing municipal corporation. Since there was no prohibition in the constitution against the creation of new municipal corporations each with taxing and bonding authority, this device provided a ready vehicle by which to avoid the constitutional limitation upon the bonded indebtedness of a municipal corporation, even though the tax burden and bonding authority upon the people within the municipality was increased with the creation of each such new corporation. Thus, school corporations, hospital corporations, library corporations, public building corporations, and others, were created, each with separate taxing and bonding authority.

However, the characteristic of all such corporations was that, in the geographical area over which they had control, each was exclusive in the performance of the particular function for which it was created. As previously noted, this distinguishing aspect of such corporations, as compared with the park system with which we are here concerned, was not presented in appellant's brief, nor was it considered in the majority opinion.

*Device Two*: The legislature has also authorized the creation of many "boards," "commissions," "departments," and "authorities," within the corporation structure of a single existing municipal corporation, and invested each such agency with authority to perform one of the governmental functions of a municipal corporation, and authorized each to separately issue bonds and levy taxes.

This court, with dubious logic and remarkable legal dexterity, has upheld the validity of such statutes. See: *Archer, Jr., etc. et al.* v. *City of Indpls., etc. et al.* (1954), 233 Ind. 640, 122 N. E. 2d 607, and cases cited therein. The evil of this practice has been compounded by the fact that under it the legislature has created a multiplicity of taxing and bonding authorities which perform segments of what was formerly considered a single governmental function. Thus, it follows that within a single city the "street department" could be authorized separately to tax and issue bonds. Furthermore, that department, performing a single function of government within a municipality, could be subdivided into subsidiary "authorities," with each assigned a segment of the function of providing streets and thoroughfares, and each authorized to tax and issue bonds.

Personally, I find no rationalization in support of these additional taxing and bonding authorities within the structure of a single municipal corporation. To do so is comparable to an attempt to defend a man charged with forgery on the ground that the offense was not really committed by him, but only by thumb and forefinger of his right hand. Even the Bible has something to say about all members of the same body being one (I. Cor. 12:14-20); yet for the purpose of imposing taxes and additional bonded indebtedness within a single municipal corporation we have said they are not one.

I do not recommend that we disturb the existing implementing taxing authorities, the constitutionality of whose existence has been considered and approved by this court, however, I am strongly of the opinion that the legislature should exercise great caution as to any further extension of the practice.

*Device Three*: We are now asked to extend the above practice into new and additional areas of municipal law by authorizing the creation of additional "districts" which perform *the same governmental function, with overlapping administrative taxing and bonding authority, within the same geographical area wherein the same function is being performed by other municipal corporations within the ascribed area.*

In this case we are asked to approve a law which purports to authorize the park department of the city of Indianapolis, in conjunction with a park district consisting all of Marion County, to operate parks throughout Marion County, and to levy taxes and issue bonds for the operation of such parks. In my opinion, the act which purports to establish this creature is unconstitutional, for two reasons:

First, it is not a municipal corporation in itself, authorized under the constitution to separately levy taxes and issue bonds of indebtedness. Rather, it is merely an implementing authority within the framework of existing governmental authority. Secondly, because as a municipal body, it does not have exclusive authority or responsibility for the operation of parks within the area for which it is established. If put into operation the result will be that city-county park district has authority to operate parks throughout the county, including the several cities and towns within the county, which have the same authority within their several distinct corporate boundaries. Thus, a situation would exist where the several cities and towns in Marion County [other than Indianapolis] would continue to operate their separate parks and to levy taxes and issue bonds for their operation; whereas, the newly created Indianapolis-Marion County park district might exercise the same authority and tax and issue bonds there-

for. The result would be that the taxpayers of the several cities and towns in Marion County [other than Indianapolis] would be burdened with a double taxing and bonding authority, for the performance of a single governmental function—the operation of public parks by municipal government. For this additional reason, I believe the law to be unconstitutional, in that it purports to authorize double taxation and bonding authority where such authority is not authorized. To attempt to do so is to pervert the fundamental law of the state. This court so held in the cases of *Cerajewski* v. *McVey* and *Rappaport* v. *Dept. of Public Health,* p. 4, *supra.*

This practice of making end runs around and through the constitution, with special authority from the legislature for such maneuver on the basis of expediency, should be stopped. It is a mockery to the basic concept of constitutional government which assures us government by law and not by men. If municipal corporations require additional bonding authority for the purpose of carrying out the necessary functions of government, as may be true in this case, they can and should acquire this authority by a direct and clearly stated amendment to the constitution.

In the meantime, in my opinion, it is the responsibility of this court, as the guardian of the constitution, to hold the line by saying, we have permitted you to go this far, but hence forth in all instances where the practice has not been approved it is and will be condemned.

NOTE.—Reported in 198 N. E. 2d 755. Dissenting Opinion reported 199 N. E. 2d 699.