CERAJEWSKI *v.* McVEY, ET AL.

[No. 28,279. Filed April 30, 1947.]

Oscar A. Ahlgren, of Whiting, for appellant.

Gerald A. Gillett, of Hammond, for appellees.

YOUNG, J.—By ch. 138 of the Acts of 1945, the General Assembly of the. State of Indiana undertook to create a new and separate taxing district or unit in all cities having a population of not less than 65,000 inhabitants and not more than 86,000 inhabitants for the purpose of building technical vocational high schools therein. § 28-4932 et seq., Burns' 1933 (Supp.). Such new and separate taxing unit, or units, automatically came into existence with the passage of this law and became known as "The Technical-Vocational High School District of the City of _____, Indiana." The statute provides that such districts shall embrace and include all of the territory lying within the corporate limits of any such city, and all property therein. The entire management, control and operation of such high school districts and the erection, building and maintenance of technical-vocational high schools therein was vested by the statute in the board of school trustees

of the school city existing in any civil city of the prescribed population. The only function of the new district, or unit, is to borrow money for the erection and building of any technical-vocational high school therein and issue and sell bonds to evidence the indebtedness created by such borrowing, and even this is done through the medium and instrumentality of the school trustees of the school city whose boundaries are identical with those of the new unit.

The City of Hammond is the only city to which, by population, the act is applicable and without this new legislation the School City of Hammond had full power and authority to undertake the building, maintenance and operation of the type of high school contemplated by the act, and to borrow money for the purpose, subject only to the two per cent debt limitation prescribed by § 1, Art. 13 of the Indiana Constitution. § 28-1427 et seq., § 28-4902 and § 28-1326, Burns' 1933. The record in the case before us, however, shows that the School City of Hammond already had such indebtedness that borrowing to the extent undertaken would have brought the indebtedness of the School City beyond the constitutional limitation. Otherwise everything necessary to the establishment of the type of high school contemplated by the act could have been done by the School City of Hammond, and it appears that the sole function of the new taxing unit is to permit the creation of the necessary indebtedness without regard to the state of the borrowing power of the School City. Under the 1945 Act, money borrowed for the new taxing unit is charged against the debt limitation of the new taxing unit and without regard to indebtedness of the School City. The substance of the result is that the School City obtains, controls and operates its new Technical-Vocational High School exactly as though no new gov-

ernmental unit had been created and as though it had been able to borrow, and had itself borrowed, the money and issued its own bonds. The only thing actually accomplished was to permit the borrowing of the necessary money under a new name notwithstanding the two per cent debt limit fixed by the constitution, which would have been transgressed had the money been borrowed directly in the name of the School City.

The appellant, who was plaintiff below, brought this action to enjoin the sale and issuing of the proposed bonds and the creation of a debt in excess of two per cent of the assessed value of the property, subject to taxation by the School City of Hammond. He lives in Hammond and within the limits of the proposed new Technical-Vocational High School District and owns property which would be subject to taxation for the payment of the interest upon, and the retirement of, the bonds proposed to be issued. He brings the action for himself and on behalf of all other tax payers similarly situated. Appellant takes the position that ch. 138 of the Acts of 1945 is unconstitutional and says that it violates Art. 13, § 1 of the Indiana Constitution, which provides that *no political or municipal corporation in this state shall ever become indebted in any manner or for any purpose to an amount in the aggregate exceeding two per centum (2%) on the value of the taxable property within such corporation*; and that it violates Art. 11, § 13 of the Indiana Constitution which provides that corporations, other than banking, shall not be created by special act, but may be formed under general laws; and that it violates § 22, Art. 4, of the Indiana Constitution, which provides that the General Assembly shall not pass local or special laws for the support of common schools; and that it violates § 23, Art. 4, of the Indiana Constitution, which provides

that where a general law can be made applicable all laws shall be general and of uniform operation throughout the State.

It is true that under the Indiana Constitution it is made the duty of the General Assembly to provide by law for a general and uniform system of common schools wherein tuition shall be without charge and equally open to all. Art. 8, § 1, Indiana Constitution. However, the performance of this duty, and the exercise of this power by the Legislature, must be within limitations elsewhere imposed by the Constitution, such as those said by appellant to be violated. *State ex rel. Anderson* v. *Brand, Trustee* (1937), 214 Ind. 347, 350, 5 N. E. (2d) 531; *McCabe* v. *Gross* (1937), 274 N. Y. 39, 8 N. E. (2d) 269.

The substance of the debt limitation section of the Indiana Constitution is italicized above. This provision of the constitution has been before this court many times and it has long been established that there may be more than one municipal corporation encompassing identical territory and that the debt limitation imposed by the constitution was intended to apply singly to the indebtedness of each corporation and not to the indebtedness in the aggregate of two or more corporations, notwithstanding the fact that they might exist and be included within the same territorial boundaries. *Campbell* v. *City of Indianapolis* (1900), 155 Ind. 186, 210, 57 N. E. 920; *Caldwell* v. *Bauer* (1912), 179 Ind. 146, 164, 99 N. E. 117; 38 Am. Jur., p. 121, § 435.

In appraising the validity of the statute before us and the proposal to proceed thereunder by appellees, we must consider the purpose of the debt limitation section of the Constitution and must look through the form of the statute to the substance

of what it does and we should not countenance subterfuge to evade the intent of our fundamental law. *Voss* v. *Waterloo Water Co.* (1904), 163 Ind. 69, 89, 90, 71 N. E. 208; *State ex rel. Matthews, Governor* v. *Forsythe* (1896), 147 Ind. 466, 472, 473, 44 N. E. 593. It seems to us that the clear purpose of § 1, Art. 13, of the Constitution, was to prevent the creation of an excessive debt by a real limitation upon the power of the legislature to authorize indebtedness. If it may be circumvented by the simple device of creating new and additional political or municipal corporations in the same territory, each with separate and independent borrowing power, for the purpose of evading the constitutional prohibition, no real limitation upon the power of the legislature to authorize indebtedness is provided and the object of the constitutional provision is defeated. If one unit after another may be imposed upon the same territory for substantially the same purpose, or if every purpose may be indefinitely subdivided and new debt limits created for each subdivision there will be, in effect, no constitutional debt limitation at all. That, it seems to us, could not have been the intent of the people whose votes made this section a part of our constitution at an election held almost 30 years after the constitution as a whole was adopted. For language indicating that multiplication of political units in the same territory, for the same purpose, each with its own separate borrowing power, is indicative of an intent to evade the debt limitation section of the constitution. See *McCullom* v. *State ex rel.* (1924), 195 Ind. 217, at pp. 222 and 223, 144 N. E. 864.

The Technical-Vocational High School District of the City of Hammond and the School City of Hammond are both concerned with the education of the children of the City of Hammond, and if the School City of Ham-

mond could create indebtedness to the extent of two per cent of the taxable property within the city limits and this new taxing unit could do likewise, then by the same process of reasoning there might be indefinite additional taxing units for educational purposes within the same territory. The functions of a vocational high school might be divided. Home economics and domestic science might be made the object of a separate borrowing unit and the mechanical arts and trades the object of another. The primary grades might be differentiated from the secondary grades, with a separate taxing unit for each, and so *ad infinitum.*

No one would contend that an enlargement to that extent of the doctrine of the independence of separate political or municipal corporations for borrowing purposes would be within the intent of the constitutional debt limitation. Yet what is attempted here is, in substance and effect, no different in quality but only in degree from what is suggested above.

In the case of *Campbell* v. *City of Indianapolis, supra,* the right of the Legislature to create separate school cities co-extensive with the several civil cities of Indiana, was in question and it was held that independent school and civil cities might exist in the same territory without aggregating their debts in determining violation of the constitutional debt limitation. With this we agree. But in the course of the opinion in that case, it was suggested that the legislature might some day attempt to evade the constitutional debt limit by multiplication of municipal corporations, and this court said in that connection:

"We can not assume that the legislature will disobey the organic law of the State, or will ever attempt to create other corporations within existing incorporated towns or cities for the redistribution of the powers or functions of such municipali-

ties, in order to evade the restriction in respect to the debt limit in our Constitution. If legislation to this effect should be passed in the future, a proper case, no doubt, will be presented for the decision of this court, and the question may then be determined."

We think this is a case where that question must be determined and it is our conclusion that the provision for a separate municipal unit for vocational high schools in territory exactly the same as that of the School City of Hammond amounts to such a redistribution of the powers and functions of the School City of Hammond as to be an evasion of the restriction in respect to debt limitation in our constitution.

In the cases of *Hively* v. *School City of Nappanee* (1929), 202 Ind. 28, 34, 35, 171 N. E. 381, and *Voss* v. *Waterloo Water Co., supra,* the attitude of the court toward evasion is made clear. In the Hively case, the court said:

"The contract here, read as a whole, and considered together with the provisions of Acts 1927, ch. 223 (§ 6867.1 *et seq.* Burns' Supp. 1929), leaves no doubt in the mind of the court that it was entered into for the purpose of evading the mandate of the Constitution, and, of doing indirectly, through the plan and through the corporation provided for by the act, that which could not be done directly. The law will look to the substance of the transaction regardless of its form or color. . . ."

In the Waterloo Water Company case, the following self-explanatory language is used:

". . . The Waterloo Water Company is merely a dummy corporation, owned by the town, but making contracts and incurring liabilities which it is admitted the town can not make or incur in its own name without violating the provisions of the Constitution restricting its power to become indebted. In other words, the town is attempting to

do by a corporation practically owned by it what it has no power to do, and is prohibited from doing. Said arrangement is a palpable violation of said article 13 of the Constitution, for what a town can not do directly it can not do indirectly through a dummy corporation controlled and practically owned by it. The Constitution can not be evaded in this manner. . . ."

The appellees lean heavily upon the case of *Follett* v. *Sheldon, Treas.* (1924), 195 Ind. 510, 144 N. E. 867. That was an action to enjoin collection of taxes levied to pay certain bonds issued in part by each, the Fremont civil and school townships, for the purpose of erecting a school house in the town of Fremont. It was claimed that the statute which authorized the issuance of such bonds conflicts with the debt limitation provision of the Indiana Constitution. This contention was denied by this court.

That case is clearly distinguishable from the case before us. The two municipal corporations involved in that case, were, as pointed out in the opinion, legitimate, separate and distinct corporate entities long before the constitutional provision we are now considering was adopted. No new entity was created to accomplish the desired purpose. No question of evasion was involved. There were already separate school and civil taxing units in the same territory, each with its two per cent debt limitation. This has long been recognized as proper but this does not fit the situation before us. We do not have before us the question as to whether the civil city of Hammond and the school city of Hammond are separate and distinct units, each with its own taxing limit. We have before us a situation where a still additional corporate unit is created in the same territory as a medium to evade the tax limits of the units already existing.

In view of our thoughts in connection with the debt limit section of the Constitution, it is not necessary for us to consider the other sections of the Constitution alleged to be violated.

Judgment reversed.

NOTE.—Reported in 72 N. E. (2d) 650.