BOOK *v.* INDIANAPOLIS-MARION BLDG. AUTHORITY ET AL.

[No. 29,228. Filed April 20, 1955.]

*Thomas E. Garvin* and *David M. Lewis,* of Indianapolis, for appellant.

*John A. Alexander, Donald A. Schabel,* and *Buschmann, Krieg, DeVault & Alexander,* all of Indianapolis, of counsel, for appellees.

HENLEY, C. J.—The sole question involved in this appeal is whether the appellant's amended complaint contained facts sufficient to constitute a cause of action against appellees as against the demurrer for want of such facts which was addressed to it.

In view of the importance of the subject matter we set out the amended complaint in its entirety, except for formal parts, as follows:

"Comes now the Plaintiff and complains of the Defendants and each of them, and for cause of action alleges and says:

"1. That the Plaintiff herein, William H. Book, is a taxpayer of Marion County, Indiana, and has been during the whole of the current year, and for many years prior thereto has been such a taxpayer and during all of said time said Plaintiff has been a resident freeholder of Marion County, Indiana.

"2. That the Defendant, Indianapolis-Marion Building Authority, is a body corporate, organized and existing in the State of Indiana by virtue of Chapter 54 of the Acts of the General Assembly of the State of Indiana for the year 1953.

"3. That the Defendants, William A. Hanley, Nola A. Boyer, Maynard R. Hokanson, William P. Flynn and Roy Sahm are Directors of the above named Defendant, Indianapolis-Marion Building

Authority, having been appointed in accordance with Chapter 54 of the Acts of the General Assembly of the State of Indiana for the year 1953.

"4. That the Defendants herein, Charles J. Lynn, Herman C. Krannert, Maynard Hokanson, Robert J. Kryter and James Birr are Trustees of the above named Defendant, Indianapolis-Marion Building Authority, appointed in accordance with Chapter 54 of the Acts of the General Assembly of the State of Indiana, 1953.

"5. That pursuant to said Act, said Authority is organized to finance, acquire, construct, equip, operate and lease to the governmental units within the territorial boundaries of Marion County, Indiana, lands or buildings for public or governmental purposes in accordance with the Acts of the General Assembly of the State of Indiana, 1953, Chapter 54.

"6. That by the Constitution of the State of Indiana, Article XIII, Sec. 1, the indebtedness of a political or municipal corporation is limited in the words and figures, to-wit:

'No political or municipal corporation in this State shall ever become indebted in any manner or for any purpose to an amount in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and County taxes, previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporation, shall be void; Provided, That in time of war, foreign invasion, or other great public calamity, on petition of a majority of the property owners, in number and value, within the limits of such corporation, the public authorities in their discretion, may incur obligations necessary for the public protection and defense, to such an amount as may be requested in such petition.'

"7. That heretofore on or about the 20th day of April, 1954, the County Council of Marion County, Indiana, appropriated for the use of the Defendant, Indianapolis-Marion Building Author-

ity, the sum of One Thousand ($1,000.00) Dollars. That under the provisions of Chapter 54 of the Acts of the General Assembly of the State of Indiana, 1953, said One Thousand ($1,000.00) Dollars is to be repaid out of funds that the Defendant, Indianapolis-Marion Building Authority, may derive from the sale of bonds pursuant to said Act or from a loan or loans negotiated in lieu of such sale of bonds.

"8. Plaintiff alleges that said Chapter 54 of the Acts of the General Assembly of 1953 is unconstitutional and void in the following particulars:

(a) Said Act purports to permit any governmental units located within the territorial limits of Marion County to enter into a lease with the Defendant, Indianapolis-Marion Building Authority, which could commit such governmental unit to pay rental for a period of a maximum of forty (40) years, and the aggregate amount of such rental over the entire period of such lease could constitute an indebtedness of such governmental unit which would be in excess of the indebtedness permitted under the provisions of Article XIII, Sec. 1, of the Constitution of the State of Indiana.

(b) Said Act purports to create a corporation other than a banking corporation by special act of the General Assembly in violation of the provisions of Article XI, Sec. 13, of the Constitution of the State of Indiana.

"9. That the Defendant, Indianapolis-Marion Building Authority, does not have any property or assets of any nature or kind, excepting only the said One Thousand ($1,000.00) Dollars appropriated by the Marion County Council as aforesaid. That Defendant, Indianapolis-Marion Building Authority, does not have any means of repaying said One Thousand ($1,000.00) Dollars, except by the sale of revenue bonds or by the negotiation of a loan or loans under the provisions of Chapter 54 of the Acts of 1953, as aforesaid.

"10. That unless the Defendants are enjoined from expending said funds appropriated by the

Marion County Council as alleged herein, it will be impossible for Marion County to be repaid said sum of One Thousand ($1,000.00) Dollars, to the damage of the Plaintiff herein and all other taxpayers of Marion County, Indiana.

"11.   That said Defendant, Indianapolis-Marion Building Authority, cannot issue said bonds or negotiate said loan or loans as provided in Chapter 54 of the Acts of the General Assembly, 1953, for the reason that any leases with governmental units located within Marion County would be void as alleged in Paragraph 8(a) and for the additional reason that said Indianapolis-Marion Building Authority is a corporation organized contrary to the provisions of the Constitution of the State of Indiana as alleged in Paragraph 8(b).

"12.   That the Plaintiff herein does not have an adequate remedy at law.

"WHEREFORE, Plaintiff prays that the Defendants and each of them be permanently enjoined from expending any of the funds appropriated by the Marion County Council on April 20, 1954, and that said Defendants be permanently enjoined from taking any further action under and pursuant to the provisions of Chapter 54 of the Acts of the General Assembly of the State of Indiana, 1953, for the costs of this action and for all other further relief in the premises." (Tr. pp. 35-40.)

The demurrer and memorandum addressed to the amended complaint, omitting formal parts, reads as follows:

"The Defendants demur to the Plaintiff's amended Complaint, filed herein on the ground that such amended Complaint does not state facts sufficient to constitute a cause of action against the defendants or any of them.                                                         .

### "MEMORANDUM

"1.   The Amended Complaint does not state facts sufficient to show that rentals reserved under leases which might be entered into between governmental units located within Marion County and the Indianapolis-Marion Building Authority would

constitute indebtedness in excess of the indebtedness permitted to those governmental units under Article XIII, Sec. 1, of the Constitution of the State of Indiana.

"2. The Amended Complaint does not state facts sufficient to show that the Indianapolis-Marion Building Authority was created by a special act of the General Assembly in violation of Article XI, Section 13, of the Constitution of the State of Indiana.

"3. The Act under which the defendants hold their respective offices, namely, Chapter 54 of the Acts of the General Assembly of the State of Indiana, 1953, is in all respects valid and constitutional."

After argument of counsel the court sustained the demurrer and the appellant, refusing to amend or plead further, judgment was entered on said demurrer.

The sole error assigned is the sustaining of the demurrer.

To reach its finding and decision the trial court was called upon to pass upon the constitutionality of Acts 1953, Ch. 54, §26-2501—26-2523, inclusive, Burns' 1948 Repl. (1953 Cum. Supp.). The trial court held the statute involved constitutional and not violative of Art. 13, §1, or Art. 11, §13, of the Constitution of the State of Indiana.

By the appeal this court is called upon to pass finally upon the two constitutional questions involved, i.e., (1) whether the Act created a corporation with power to issue revenue bonds creating an indebtedness in excess of the limitation of two per cent of taxables, and an indebtedness in excess of the limitation to be incurred by the municipality by way of rent obligation extending to a possible forty year term, all as a subterfuge to evade Art. 13; and (2) whether the Act constitutes "a special act of the General Assembly" other than a

banking corporation, allegedly in violation of Art. 11, of the Constitution of the State of Indiana.

The Act itself, encompassing ten pages of the official statute, should be read in its entirety for a complete understanding of its intent and import. Space unfortunately does not permit copying here. §§26-2501 to 26-2523 inclusive, Burns' 1948 Repl. (1953 Cum. Supp.).

We will consider the two questions raised by the decision in the order in which they appear in the memorandum of the demurrer.

Appellant, in his brief, first urges seriously that the Act involved sets up a new corporation which, in effect, is designed to circumvent the wisdom of the 1881 Constitution makers in limiting the size of the debt of the state and its political subdivision. This would be accomplished by reason of provisions permitting the corporation to borrow money, create, issue and sell revenue bonds, which might cover a financing period of forty years. By the terms of the Act the bonds would be amortized and paid as to principal retirements and interest from the rental income derived by a long term lease on a building, with annual rentals sufficient for the complete servicing of the bonds. Appellant further urges that the permission of the Act to include in the lease an option to purchase, is further indication of the subterfuge and that the overall rental for the whole term might, and probably would, far exceed the two per cent limit of the political subdivision lessee-optionee.

It is observed that appellant's contention under Art. 13, of the Constitution of the State of Indiana, is that (a) the corporation is authorized to borrow money, and (b) that the long term lease with option to purchase, is in legal reality a contract of purchase, the amount of which could, and probably

would, far exceed the two per cent constitutional limitation. Appellant takes the position that the entire aggregate rental to be collected over the whole term of the lease should be the basis of determining the amount of the alleged debt. In this appellant is in error. It must be conceded that an essential function of counties and cities is the housing of offices, storage of property, and, in general, the conducting of their public business. Whether this is accomplished by purchase or construction of buildings, including the underlying real estate, or whether the same be occupied under short or long term rental leases, are all matters for the sound discretion of the governing bodies of such counties and cities. In the absence of fraud, or the violation of the constitutional debt limitation, such purchases or leases are lawful, regular and orthodox practice for many years. Should a county or city, or both, seeking the acquisition of a building for their lawful governmental functions, choose to lease such a building, say for forty years at a hypothetical rental of $10,000 per year, can it be logically claimed that such governmental unit would thereby incur an indebtedness of $400,000 at the time of execution of the lease, within the meaning of the constitutional limitation? We think not. Rather, it would thereby incur an indebtedness of $10,000, within the meaning of such limitation, assuming the annual rental was to be paid in advance. It is to this smaller amount that the constitutional debt limitation test applies, since the future annual installments of rent do not become debts until earned.

The leading earlier case supporting our opinion is that of *City of South Bend* v. *Reynolds* (1900), 155 Ind. 70, 57 N. E. 706. There, a private citizen contracted to build a city hall on land belonging to the City of South Bend and to lease the building to it for 12 years

at an annual rental of $7,200, which was admittedly reasonable, and an option was granted to the city to purchase the building at the end of the lease for the original cost with interest, but giving credit for all rents paid. This court in that case said:

"It is evident that rent for suitable offices, for the officers of a city, is as much an ordinary and necessary expense as the expense for water and light (*Grant* v. *City of Davenport,* 36 Iowa 396, 403), and that when the city agrees to pay the rent for said offices annually or monthly, the contract does not create an indebtedness for the amount of all the annual or monthly payments. While the rent for suitable offices for city officers is an ordinary and necessary expense, the erection of a city hall, or a building for the use of the city officers, is not in any sense an ordinary and necessary expense, but is an extraordinary one. *Grant* v. *City of Davenport, supra.* There is a clear and plain distinction between a contract for the use of rooms or a building for city purposes and the erection by the city of a building to be used for such purposes. The one is an ordinary and necessary expense, while the other involves municipal ownership of the building or rooms, the means of furnishing the offices, and is an extraordinary expense. *Brown* v. *City of Corry,* 175 Pa. St. 528, 34 Atl. 854; *Grant* v. *City of Davenport, supra.*

"Under the contract in this case, however, the city hall is not to be erected by or for the city, but by Mr. Oliver who is to own the same, the city being the owner of the real estate upon which it is to be erected. The only contract of the city is to pay an annual rent of $7,200.00 which is admitted to be only a fair rental value for said building, and if the city does not exercise its option to purchase said building at or before the termination of the lease, to sell and convey the real estate at the price named, provided said Oliver exercises his option to purchase the same within six months after the termination of the lease. If neither party exercises the option provided for in said contracts, within the time fixed, then the city hall building becomes the property of the city.

"Under said contract the city is under no obligation whatever to pay anything for the erection of said building or to purchase the same when erected. If it should attempt to exercise its option to purchase said building, but cannot do so without violating the constitutional limitation as to becoming indebted, it may be enjoined from exercising such option. No facts are alleged in the complaint showing that the current revenues of the city will not be sufficient to pay the indebtedness for rent under said contract each year when the same comes into existence, including all other expenses for which the city is liable. The allegations of the complaint do not show, therefore, that said contract creates any indebtedness in violation of the Constitution. *Cason* v. *City of Lebanon*, 153 Ind. 567." *City of South Bend* v. *Reynolds* (1900), 155 Ind. 70, 73, 74, *supra*.

To the same effect is the case of *Jefferson School Twp.* v. *Jefferson Twp. S. Bldg. Co.* (1937), 212 Ind. 542, 10 N. E. 2d 608, wherein the building corporation organized under Chapter 223, Acts 1927, erected a school for the township from the sale of revenue bonds and leased it for 26 years at an annual rental which was not charged with being excessive, as was found to be the fact in the earlier case of *Hively* v. *School City of Nappanee* (1929), 202 Ind. 28, 169 N. E. 51, 171 N. E. 381, cited by appellants, which is thus distinguished from the South Bend and similar cases where no finding of excessive rentals exist.

The latest decision of this court on the subject is *Protsman* v. *Jefferson-Craig Consolidated School Corporation* (1953), 231 Ind. 527, 109 N. E. 2d 889. This court followed its decision made in the Jefferson School Township case wherein the Hively case was again distinguished, using the following language:

"As noted in the Jefferson Township case, considerable emphasis was placed in the Hively case

upon the allegations of the complaint in that case that the annual rental payments were in excess of a fair rental. Such is not the case here. The complaint here does allege that to be a fact, but there is no evidence whatever to support that allegation. It is stipulated that notice of the execution of the lease was given by publication and remonstrances were filed thereto, and thereafter the State Board of Tax Commissioners found that a necessity existed for the execution of said lease, and that the rental therein was fair and reasonable and said remonstrances were denied. Thus the only evidence before the court was to the effect that there was a necessity for the execution of the lease, and that the rental was fair and reasonable. If that be true, it follows as a matter of course that no part of such rental payments could be payments of purchase price in disguise. The case is apparently one where the lessor voluntarily relinquishes to the lessee the profits which usually flow from the ownership of leased real estate." *Protsman* v. *Jefferson-Craig Consolidated School Corporation* (1953), 231 Ind. 527, 538, *supra*.

An interesting note on the subject of debt limitation is to be found in Indiana Law Journal, Vol. 25, p. 325.

Appellant cites two cases in which acts were held to violate the debt limitation provision of the Constitution. They are distinguishable from the case at bar. In *Cerajewski* v. *McVey* (1947), 225 Ind. 67, 72 N. E. 2d 650, Acts 1945, Ch. 138 was involved. It provided a new and separate *taxing district* in cities between 65,000 and 86,000 population for the building of technical-vocational high schools but with the complete control, operation and management in the school trustees of the school city. Apparently in part, because it had the effect of multiplying taxing units in the same city, the court held that it was an unlawful evasion of the constitutional debt limitation. *Rappaport* v. *Department of Public Health* (1949), 227 Ind. 508, 87

N. E. 2d 77, grew out of Chapter 200, Acts 1945, as amended by Chapter 323, Acts 1947, and attempted to create a new and independent taxing power for hospital and health purposes in the city of Indianapolis, functions already vested in the city itself for many years. Bonds were to be issued in the name of the city itself to be signed by the Mayor and attested by the city controller. The distinction between the facts of that case and the case at bar are obvious. Also see extended dissenting opinion of Emmert, J. While the latter opinion is a dissent the language correctly recites the controlling policy and decided cases of this court.[1]

The second item of appellant's memorandum charging that the Act of 1953 is a special act in violation of said Art. 11 of the Constitution of the State of Indiana is not well taken. The case of *Rosencranz* v. *City of Evansville* (1924), 194 Ind. 499, 143 N. E. 593, cited by appellant, held the act there involved provided for a city port in cities of population between 85,000 and 86,000, obviously applicable only to the city of Evansville and, being an unreasonable classification, the act was properly held a special act, and, therefore, violating Art. 11 of the Constitution of the State of Indiana. The case of *Jordan* v. *Logansport* (1912), 178 Ind. 629, 99 N. E. 1061, related to sewer construction in cities between 16,000 and 20,000 population. There again this

---

1. "Nor is there any reasonable ground for denying that a hospital may be a local public improvement . . . Art. 13 does not . . . purport to say that only public improvements existing at the time of its adoption could be considered public improvements for all time, 'for, while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world it is impossible that it should be otherwise' . . ." Emmert, J. dissenting in *Rappaport* v. *Department of Public Health* (1949), 227 Ind. 524, 534, 535, 88 N. E. 2d 150, 156.

court failed to hold the classification unreasonable and arbitrary, but divided evenly in opinion with one not participating, thus permitting the trial court's judgment holding the classification reasonable to stand. These cases do not constitute authority for the charge of special act with reference to the act involved in the case at bar where the classification is as broad as the state itself and applicable to "each county of the state." Art. II, §13 of the Constitution of the State of Indiana should not be contorted into a meaning not applicable to the facts in this case. Appellant's contention as to the act being a special one is without compelling merit. See *Johnson* v. *Board of Park Commissioners of Fort Wayne et al.* (1930), 202 Ind. 282, 174 N. E. 91, and cases cited therein.

The decision of the Marion Circuit Court in sustaining the demurrer to the amended complaint was correct.

Judgment affirmed.

Achor, Bobbitt, Emmert and Levine, JJ., concur.

NOTE.—Reported in 126 N. E. 2d 5.