WILLIAM J. LAWSON ET AL. *v.* SOUTH BEND
PUBLIC TRANSPORATION CORPORATION.

[No. 171S8. Filed June 22, 1971.]

*Warren A. Deahl, Franklin A. Morse, II, Thornburg, McGill, Deahl, Harman, Carey & Murray,* of South Bend, for appellants.

*Robert J. DuComb, Sr., DuComb, Nimtz, DuComb,* of South Bend, *George B. Gavit, Ice Miller Donadio & Ryan,* of Indi-

anapolis, *Harry W. Scott, Adair, Perry, Beers, McAlister & Mallers,* of Ft. Wayne, for appellee.

HUNTER, J.—This suit originated in the St. Joseph Superior Court where appellants sought to enjoin appellee, South Bend Public Transportation Corporation (from issuing and selling bonds pursuant to an ordinance duly enacted on the grounds that the enabling statute, the Urban Mass Transportation Act of 1965, Section twenty-six (being Ind. Ann. Stat. § 48-8826 [1970 Supp.]) was unconstitutional under the provisions of the Indiana Constitution, Art. 13, § 1) which purports to limit municipal debt incurrence to two-percent of the assessed valuation of taxable property therein situated. The trial court denied the injunction and this appeal follows.

It appears from the record that South Bend's privately owned mass transportation system was acquired, due to its financial difficulties, by the South Bend Public Transportation Corporation, a municipal corporation organized pursuant to the provisions of the Urban Mass Transportation Act of 1965 (Ind. Ann. Stat. § 48-8801 *et seq.* [1970 Supp.]). The boundaries of the municipal corporation thus created were co-terminous and identical with those of the civil city of South Bend. On October 14, 1968, the Board of Directors of the newly formed corporation determined to issue bonds to a total of two million dollars ($2,000,000.00) in order to acquire the assets of the privately held transportation system and if necessary to acquire additional assets for the operation of its transportation system. Required notices were published and a public hearing conducted on the proposed bond issuance. An ordinance was subsequently passed authorizing the sale of the bonds, there being an insufficient number of remonstrators seeking to defeat it. The parties to this suit agreed by stipulation that the proposed bond issue would not exceed two-percent of the assessed valuation of taxable property within the boundaries of the Public Transportation Corporation, but would, however, exceed the two-percent limitation if added to

the outstanding general obligation bonds of the civil city of South Bend.

The sole question, then, for our consideration is whether section twenty-six of the Urban Mass Transportation Act of 1965, is an unconstitutional attempt to circumvent the two-percent municipal debt limitation imposed by Art. 13, § 1 of the Indiana Constitution. That section, as here pertinent, provides:

> "No political or municipal corporation in this State shall ever become indebted in any manner or for any purpose to an amount in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporation, shall be void: . . ." Ind. Const. Art. 13, § 1.

This court has had several opportunities to interpret the above quoted provisions and several maxims have evolved in respect to the debts of municipal corporations. See *Datisman* v. *Gary Public Library* (1960), 241 Ind. 83, 170 N. E. 2d 55; *Bailey* v. *Evansville-Vanderburgh Airport Authority District* (1960), 240 Ind. 401, 166 N. E. 2d 520; *City of Indianapolis* v. *Buckner* (1954), 233 Ind. 32, 116 N. E. 2d 507; *Cerajewski* v. *McVey* (1947), 225 Ind. 67, 72 N. E. 2d 650; *Campbell* v. *City of Indianapolis* (1900), 155 Ind. 186, 57 N. E. 920. The principles stated in these cases are well settled and we need not enter into a lengthy discourse concerning them. The constitutional limitation above quoted clearly prohibits debt incurrence in excess of two-percent, but as we said in the *Buckner* case:

> ". . . this limit applies to each corporation individually, not in the aggregate to all properly created municipal corporations which may cover the same area or include the same taxpayers. *The creation of additional municipal corporations for proper purposes is within the wisdom of the Legislature.*" 233 Ind. at 35, 116 N. E. 2d at 509. (our emphasis)

However, the Legislature's prerogative in this regard does not go unchecked. Although there are no hard and fast rules under which to determine whether a particular legislative act is a legitimate exercise of the Legislature's authority or a mere attempt to evade the debt proscriptions of Art. 13, § 1, we are required to consider each case on its own facts in light of the purpose of the constitutional provision. *Rappaport* v. *Department of Public Health and Hospitals of City of Indianapolis* (1949), 227 Ind. 508, 87 N. E. 2d 77; *Cerajewski* v. *McVey, supra.*

While we have refrained from stating with any preciseness exactly what activities or governmental functions may be conducted through the device of a separate municipal corporation, we have indicated that they may be created to undertake *vital public functions. Bailey* v. *Evansville-Vanderburgh Airport Authority District, supra.* The nature of the function is not controlling, nevertheless, and we cannot countenance an obvious subterfuge designed to evade the intent of our fundamental law. *Cerajewski* v. *McVey, supra.*

To determine whether the act here in question was designed solely to permit additional debt incurrence and thus may be characterized as a "subterfuge" to circumvent the constitutional proscription will require some examination. That the act's purpose was to establish a framework under which a vital public function might be conducted can hardly be challenged. Mass transportation has become increasingly important to the citizens of our ever-growing cities and towns and is a service which might reasonably be considered essential to many people in numerous localities. It is generally recognized, nevertheless, that privately owned mass transportation systems have experienced severe financial difficulties and indeed, such was the case in South Bend. Acknowledging the need for mass transportation systems, their role in the economic health of a community and the inadequacy or non-existence of privately owned systems (see Ind. Ann. Stat. § 48-8802

[1970 Supp.]), the Indiana Legislature determined that such a system might properly be owned and operated by a separate municipal corporation. The propriety of allowing a municipality to engage in such activity is not seriously questioned and has been indorsed by authorities in the field of local government. See McQuillin, Municipal Corporations, § 35.11 (1970).

Given therefore the vital nature of the service to be rendered and the acceptability of municipal participation, we are unable to say that the provision allowing for the issuance of bonds to the extent of two-percent of the assessed valuation of the municipal corporation thus created, notwithstanding any debts already incurred by the civil city, is unconstitutional. Any number of factors may have convinced the legislature that a mass transportation system might best be administered through the use of a separate and distinct municipal corporation. Presumably financing of the operation was not a factor ignored, but also ease and efficiency of management, separate accountability, relative isolation from routine municipal politics and professionalization of the service may have been persuasive. Suffice it to say that there were sufficient considerations other than those purely financial which may have convinced the Legislature to provide for establishment of a separate municipal corporation for mass transportation purposes. This being the case we cannot say that the legal scheme adopted by the legislature was simply a subterfuge to obviate the restrictive provisions of Art. 13, § 1. We have come too far and decided too many cases to here overrule our previous stands on the constitutionality of similar acts.

For these reasons, the judgment of the trial court must be affirmed.

Judgment affirmed.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 270 N. E. 2d 746.