Harold **SHOWECKER**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 180S23.

Supreme Court of Indiana.

March 24, 1982.

Harriette Bailey Conn, Public Defender, Carr L. Darden, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On April 17, 1978, Appellant was charged with the crimes of Burglary and Theft in a two count Information. At the conclusion of the State's Case-in-Chief, the trial court dismissed the Theft Count against the appellant. The jury returned its verdict on June 22, 1978, finding Appellant guilty of Burglary. Appellant was sentenced to fifteen (15) years. Appellant did not perfect a timely direct appeal from this conviction and sentencing, and has now appealed through a belated direct appeal.

Appellant alleges error in the sufficiency of the evidence and in the instructions given by the court.

On April 17, 1978, Harold Showecker and Rocky Neville went to Martinsville, where, around 9:00 or 10:00 a. m., they burglarized a home. On the way back to Indianapolis, they were drinking, and picked out the house of C. M. Bottema, III, to burglarize because it "looked like a good house." They drove into the driveway, went up and knocked on the door and no one answered. A window to the garage was broken. Upon entering the house, the men ransacked the rooms while searching for valuables to steal. Photographic equipment, money and jewelry were taken. The larger things were put in the trunk of the car. A television set was disconnected and found sitting by the sliding glass doors with the cord wrapped around it.

Bottema's next-door neighbor, Mrs. Hughes, noticed the strange car pulled up in the Bottema's back yard and parked, with the trunk lid open, by the sliding glass doors at the back of the house. She attempted to reach Mr. Bottema to inquire if anyone were supposed to be at his home. She talked to Cassius Bottema, Jr., (Cash) the homeowner's father. He arrived before the burglars left the house. When he arrived, he looked at the house, yelled to Mrs. Hughes to call the sheriff and went inside. He saw the two men going out the window. Mrs. Hughes also saw the men climbing out of the window. Her husband yelled at them and they ran around the house. They came around the house toward Cash Bottema, who had gone out after them. They had a knife, tire iron, and lug wrench. As Cash came toward them, he told Mr. Hughes to get a gun to keep them there until the sheriff arrived. Hughes searched for a gun and couldn't find one. He finally grabbed a poker from the fireplace. Mr. Bottema had a cattle cane in his hand. Rocky Neville said if Bottema didn't let them in their car they would kill him. Bottema chased them with the stock cane. They ran and split up, trying to get to their car. Cash beat them to the car and removed the ignition keys, used his cane to reach underneath the car and jerk out some wires. They threatened to knock out his car windshield if he didn't let them get to their car. He didn't let them past. Neville smashed the windshield of Bottema's Comet automobile with a tire iron. Terry Hughes arrived with the fireplace poker and the burglars fled. They ran through adjacent fields and farm land where they were eventually captured by the sheriff and his men who had arrived at the scene. Camera equipment, a drill, shotgun and a flowered pillowcase with silver change in it were found in the car. C. M. Bottema II's rings and money from his money clip were also missing from the house. When the men were apprehended they were returned to the scene where they were identified by the eyewitnesses.

I.

Appellant claims that the evidence is insufficient to prove that he intended to commit a felony upon entering the dwelling. In summary, appellant claims that he did

not participate in the burglary. He claims that he refused to help Rocky Neville because they had argued over money due him from a drug deal. He claims that he stayed in the car and went in the house only to warn Rocky when Bottema drove up, and that he was forced to run when Bottema entered the house.

When reviewing the sufficiency of the evidence this court will not weigh the evidence or determine the credibility of witnesses. Rather, we will consider only that evidence which is most favorable to the State, together with all logical and reasonable inferences to be drawn therefrom. The verdict will be upheld so long as there is sufficient evidence of probative value from which the jury could find the defendant guilty beyond a reasonable doubt. *Willard v. State*, (1980) Ind., 400 N.E.2d 151, 160, *Love v. State*, (1979) Ind., 393 N.E.2d 178, 180; *Chambers v. State*, (1979) Ind., 392 N.E.2d 1156, 1161.

■ Appellant does not deny that he was in the company of a co-defendant when this crime was committed. He does not deny that he was in the dwelling that was burglarized. He admits that he saw Rocky Neville break through a window in the Bottema house and enter the premises, and admits threatening Bottema and fleeing from the police. He claims he merely waited outside in the car and went inside to warn his friend. Therefore, he argues that the State failed to prove beyond a reasonable doubt that he possessed the felonious intent to commit a felony when he entered the dwelling.

All of the witnesses who first saw the burglary in progress saw a car in the backyard with the trunk lid open. None saw a man sitting inside the car. When Bottema reached the home, the appellant was inside the home. The other evidence has been set out in detail above. There was sufficient evidence to support the reasonable inference that the defendant was a principal actor in the crime and broke into the house with felonious intent.

■ In addition, Ind.Code § 35–41–2–4 (Burns 1979) provides that "a person who knowingly or intentionally aids, induces or causes another person to commit an offense commits that offense...." Thus appellant's activities in acting as a lookout and assisting in the escape, while having an awareness of the burglary and access to the getaway car and the stolen goods, would constitute commission of this offense if his version had been believed. *See Smithart v. State*, (1971) 256 Ind. 553, 270 N.E.2d 740. It is clear that a reasonable trier of fact could conclude that appellant Showecker had participated in the burglary of the home. A conviction may be sustained upon circumstantial evidence alone. *Willard v. State*, (1980) Ind., 400 N.E.2d 151, 160; *Ruetz v. State*, (1978) 373 N.E.2d 152, 156–57. *See also: Ashbaugh v. State*, (1980) 400 N.E.2d 767, 774. There is no error on this issue.

## II.

■ Appellant claims that the trial court erred in refusing to give Defendant's Tendered Instruction Number 3 which read as follows:

"While a specific intent to commit a felony may be proven by circumstantial evidence in a prosecution for burglary, such evidence will not be sufficient if it merely tends to arouse suspicion of guilt."

Appellant contends that there was no adequate instruction given on the substance of this instruction. We disagree. The trial court gave a lengthy instruction on the "beyond a reasonable doubt" standard of proof. This instruction was referred to again in final instructions. In addition two other final instructions tendered by defendant were given which were instructions on the material element of intent to commit a felony. It is not error to refuse to give tendered instructions the subjects of which are covered by other instructions given by the court. *Ross v. State*, (1980) Ind., 413 N.E.2d 252, 257; *Lynn v. State*, (1979) Ind., 392 N.E.2d 449, 452; *Murphy v. State*, (1977) Ind., 369 N.E.2d 411, 417.

### III.

Appellant finally alleges that the trial court erred in sentencing by failing to state its reasons for imposing an increased sentence.

Appellant was charged with Burglary, a Class B felony. The penalty for that crime is fixed by Ind.Code § 35–50–2–5 (Burns Code Ed.Repl.1979) as follows:

"A person who commits a Class B felony shall be imprisoned for a fixed term of ten (10) years with no more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances."

Appellant was sentenced to fifteen (15) years imprisonment.

In *Hardin v. State*, (1980) 404 N.E.2d 1354, 1359–60; *quoting Gardner v. State*, Ind., 388 N.E.2d 513 at 517 we stated:

"When a judge increases or decreases the basic sentence, suspends the sentence or imposes consecutive terms of imprisonment, the record should disclose what factors were considered by the judge to be mitigating or aggravating circumstances."

Here, this court remanded this cause to the trial court and ordered the trial judge to make written findings and a statement of the court's reasons for selecting the sentence imposed, setting out aggravating or mitigating circumstances, if any, as specified in Ind.Code § 35–4.1–4–7 (Burns § 35–50–1A–7 1979 Repl.). In compliance with our order, the trial court made its written findings and reasons for the imposition of the sentence on Harold Showecker, *nunc pro tunc*, effective as of the date of sentencing. The trial court found that Harold Showecker had a history of criminal activity which included crimes of violence and theft; that during the commission of this offense, in concert with his co-defendant he threatened the life of a prosecuting witness, and did substantial damage to the property of the victim; that the imposition of a reduced sentence or suspension of a sen-tence would depreciate the seriousness of the crime; that defendant is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility; that there were no mitigating circumstances, and that the aggravating circumstances far outweighed any mitigating circumstances.

We find that these findings set out sufficiently the trial court's reasons for imposing the sentence it did, and that in view of the circumstances the sentence is not manifestly unreasonable.

Judgment affirmed.

GIVAN, C. J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.