Frank POWELL, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 181S16.

Supreme Court of Indiana.

Oct. 25, 1982.

John J. Rochford, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Frank Powell, Jr., was convicted of Rape, Ind.Code § 35–42–4–1 (Burns Repl. 1979), Robbery, Ind.Code § 35–42–5–1 (Burns Repl. 1979), Criminal Confinement, Ind.Code § 35–42–3–3 (Burns Supp. 1982), and Theft, Ind.Code § 35–43–4–2 (Burns Supp. 1982), at the conclusion of a jury trial in Marion Superior Court, Criminal Division II, on June 12, 1980. Powell received a term of twenty (20) years for the rape, eight (8) years for the robbery, twenty (20) years for the confinement, and four (4) years for the theft. The sentences were ordered to be served consecutively. Powell now appeals.

Appellant raises five errors on appeal, concerning:

1) whether the special judge had jurisdiction to preside over the cause; 2) whether there was incompetent representation of counsel; 3) whether the trial court failed to act properly upon Appellant's Suggestion of Insanity; 4) whether there was sufficient evidence to convict Appellant; and, 5)

whether there was error in sentencing Appellant.

The evidence most favorable to the State shows that on November 24, 1979, the victim, P.B., arrived at her apartment shortly before 9:00 p.m., with her three year-old daughter. As P.B. took her daughter from her car, Appellant Powell approached and asked the victim if she knew where he could find Theresa Green, who had babysat for the victim. The victim said she did not know and Appellant left. Appellant later returned to the victim's apartment and asked if he could use her phone. She refused and he then forced open the door and entered the apartment. He slapped the three year old-child to the floor and told her to shut up. The victim calmed her daughter and asked Appellant not to hurt her daughter and asked what he wanted. Appellant asked if she had money and told her that was all he wanted, that he would leave and not hurt the two of them if she gave him the money. She gave him some money, hoping he would leave but he then said, "I need sex. I need sex bad," and began to tug at her and told her to strip. During the exchange, Appellant threatened to harm her if she did not follow his orders. He said "Don't try anything, because if you do I'm going to hurt you." The victim said her daughter was trembling with fear. The victim put her daughter in her bedroom and she and Appellant went to the daughter's room where she disrobed at Appellant's command. He then threatened her again and raped her. Afterwards, the victim emptied her purse for Appellant, who inspected the contents. The Appellant then forced the victim to go to the bathroom where he ordered her to wash her vagina with her fingers. He stated that he had done this before and he wanted to make sure a hospital test would not reveal that he had raped her. He then pulled the victim into her daughter's bedroom and raped her again. Appellant then yanked the telephone cord out of the wall. He spotted someone outside the apartment so he took a knife from the kitchen drawer and said he would kill the victim if she ran or made any noise. He pulled her down the stairs to her

automobile and ordered her, at knifepoint, into her automobile. After a short ride Appellant released the victim but took her automobile. P.B. testified that at one point Appellant slapped her, and during the entire encounter she feared for her safety and that of her daughter.

## I

The prosecution of Appellant began on November 28, 1979, with the filing of a four count information before the Honorable Webster Brewer, regular Judge of the Superior Court of Marion County, Criminal Division II. On February 21, 1980, the day the cause was set for trial, the regular Judge orally appointed the Honorable Sam Blum as Special Judge in this cause, due to the congestion of the court's calendar. It is admitted that the regular Judge did not follow the procedures required under Ind.R. Crim.P. 13 in making the appointment of a special judge. It is also admitted that Ind. Code § 33–9–4–1 gave authority for a presiding judge of a criminal court to appoint a special judge *sua sponte* when the business of such court became congested. This statute was repealed, however, effective January 1, 1979, Acts 1978, P.L. 2 § 3309.

When Judge Brewer made the appointment of the special judge, the following took place:

"THE COURT: .... Is there any objection to Sam Blum acting as Special Judge in this matter?

MR. HARROLD [Defense Counsel]: Judge, . . .

MR. CONWAY [Counsel for the State]: None by . . . go ahead.

THE COURT: All right, then let . . .

MR. HARROLD: . . . the defendant has no objection. Excuse me, Mr. Conway.

THE COURT: All right. The record shows that the defendant and the State has no objection.

MR. CONWAY: State has no objection."

At this point, the State and Appellant had entered into a plea agreement in which Appellant had agreed to plead guilty to two of the four charges and the State had

agreed to dismiss the remaining two charges. This plea agreement was then submitted to the court and the court insisted that the appellant must admit the facts of all four charges with which he was charged before he would accept the plea of guilty to the two charges. Appellant insisted he needed only to admit to the truth of the facts of the confinement and the robbery to which he was pleading guilty and the State agreed they would be satisfied with that. Special Judge Blum, however, would not accept that. At this point, Defense Counsel Harrold moved to have the cause remanded to the regular judge to hear the case but Special Judge Blum overruled his motion as untimely. The Special Judge then reserved his acceptance of the guilty plea until March 14, 1980, and no more objection was raised for Sam Blum's role as Special Judge at this point. The plea agreement was later withdrawn and the cause set for trial. Appellant made no further objection to the service of Attorney Blum as Special Judge until after his conviction. He did not raise the issue in his Motion to Correct Errors as originally filed. He later, on October 31, 1980, filed a belated and amended Motion to Correct Errors in which he made reference to the method of selection of Special Judge, which was overruled by the trial court.

■ Clearly, the appointment of Special Judge Blum was procedurally improper in many ways but we need not consider those issues as Appellant has waived any objection he might have to the appointment of Judge Blum and raised no question about the procedures used in appointing him. He accepted his jurisdiction and agreed to submit matters to him, one of which was the plea bargain. After he found he was dissatisfied with the way in which the special judge handled the plea bargain, he then moved to remand the cause back to the regular judge. He still raised no question nor made any objection to the manner in which the special judge was appointed, nor did he question his jurisdiction in any way. The motion to remand was made orally, was not argued and was not accompanied by citation of any authority. Even though the method of selection of a special judge was irregular, the appellant waived the irregularity by accepting the appointment and submitting to the jurisdiction of the special judge, with full knowledge of the irregularity. *Marts v. State,* (1982) Ind., 432 N.E.2d 18; *Pruitt v. State,* (1978) 269 Ind. 559, 382 N.E.2d 150; *Gears v. State,* (1932) 203 Ind. 400, 180 N.E. 592. Appellant's claim that the entire proceeding was void since the special judge was not properly qualified, must also fail. Both parties submitted to his authority as a judge and neither questioned his authority until this appeal was initiated. Thus, he was operating under color of authority and served as a judge *de facto* even if it could arguably be said that he was not acting as a judge *de jure*. *State ex rel Smith v. Starke Circuit Court,* (1981) Ind., 417 N.E.2d 1115, 1123; *Gordy v. State,* (1974) 262 Ind. 275, 283, 315 N.E.2d 362, 367.

II

Appellant claims he was denied his right to competent counsel. At the time of his arraignment, the regular judge appointed trial counsel for appellant. Counsel appointed was a regular public defender in the court and was experienced in criminal trial matters. Appellant seems to base his complaint on the fact that he had written letters to the judge on two different occasions complaining that he was not getting proper and diligent representation from his attorney. His first such complaint was on February 11, 1980, and the trial court set a hearing on said matter for February 21, 1980. The record shows that on February 21, 1980, there was a hearing and it was on that date that the plea bargain was submitted to Special Judge Blum. The record shows that the judge questioned Appellant at length and advised him of his constitutional rights and the matters he was waiving by pleading guilty. Powell was then asked by the judge if he was satisfied with his attorney and Powell said that he was. The judge asked Powell if he had conferred with his attorney and he said he had conferred with him on three or four occasions and expressed satisfaction with the repre-

sentation he was receiving from his attorney. This was in spite of the fact that the February 11th letter previously sent had said that he saw his attorney only one time and was dissatisfied with him. The record showed that while they were in the court for the plea bargain hearing, Appellant consulted with his attorney on several occasions regarding questions asked by the trial judge. At no time did he tell the judge he was dissatisfied in any way with the representation he was receiving, or ask for any relief in any way. Rather, he expressly indicated he was receiving good representation and was satisfied with it.

On March 31, 1980, the appellant again wrote a letter to the judge, complaining that he was not being properly represented. He asked the court to appoint a different attorney and to assign him to a different court room. Apparently no action was taken on this letter. Appellant now complains that his counsel was incompetent based on unfavorable results reached in his trial and on actions, or failure to act, of his attorney with respect to some of the proceedings. Failure of counsel to prevail in a matter he undertakes on behalf of a defendant is, of course, not evidence of incompetency. Neither will we second-guess choices of tactics or strategy of trial counsel. A determination of counsel's adequacy can be made only on the facts and circumstances of the entire case. *Laird v. State,* (1979) Ind., 385 N.E.2d 452; *Skinner v. State,* (1978) Ind., 383 N.E.2d 307. There is a strong presumption counsel has performed competently and to overcome this presumption, Appellant must show that what the attorney did or did not do made the proceedings a mockery of justice, shocking to the conscience of the reviewing court. *Duncan v. State,* (1980) Ind., 400 N.E.2d 1112.

One of the complaints of Appellant is that trial counsel did not handle the "suggestion of insanity" properly and that the trial court failed to act on it. The record shows that counsel advised the trial judge at the time of filing the Suggestion of Insanity that he had discussed it with Appellant and that Appellant did not want to file a plea of insanity and was not in favor of filing this Suggestion of Insanity but agreed to it after discussing it with his attorney. Counsel felt it was in the best interest of Appellant to raise this question and indicated to the trial court he was raising questions in defense of Appellant because he thought it was in his best interest to do so. He indicated to the trial court that Appellant was a difficult person to work with but he wanted to see to it that he got a full and complete trial to the best of his ability. Appellant cannot now be heard to complain that counsel did not prevail on raising an issue to the trial court that Appellant himself did not want raised in the first place.

Other errors complained of by Appellant are that defense counsel was not ready for trial within seventy days, that defense counsel did not object to the appointment of Special Judge Blum, and that defense counsel did not object to the rejection of the plea agreement. Isolated instances of error do not constitute inadequate representation unless the trial was a mockery of justice. *Id.* at 1114. The incidents that Appellant complains took place during trial could have been strategy decisions by defense counsel or simply matters where defense counsel failed to prevail before the bench. None of these incidents show how Appellant was prejudiced nor do the incidents show incompetency of counsel; rather, they indicate the disappointment of Appellant that defense counsel did not do better. The record shows that in view of the evidence, facts, and circumstances in the cause, trial counsel well and ably represented the appellant and there were no grounds presented to the trial court requiring it to appoint other or additional counsel.

### III

On the morning of trial, Appellant filed a pleading he entitled "Suggestion of Insanity" and which read:

"Comes now the Defendant, FRANK POWELL, JR., by counsel, and respectfully requests the court to appoint two (2)

disinterested psychiatrists to examine him, and determine if his comprehension is sufficient to understand the nature of the charges against him and to assist his attorney in the preparation of his defense, and further examine him to determine whether or not he was of legal and sound mind at the time of the offense herein as to its commission."

No evidence was offered in support of the Motion and as Appellant admits in his brief, it was not forcefully argued. Counsel advised the court that the appellant was not in favor of filing an insanity plea and was not really in favor of raising this issue but apparently had agreed to have his counsel file it. Appellant's counsel indicated he would abide by the ruling of the court and be ready to go to trial. The trial judge indicated that from what he observed there was no evidence that any examination of Appellant was necessary and since it was filed at this late time on the morning of trial, apparently viewed it as nothing more than a tactical matter.

■ The State's position is well taken, that Appellant has waived this issue under *Carlyle v. State*, (1981) Ind., 428 N.E.2d 10, 13; Ind.R.App.P. 8.3(A)(7). Appellant's argument here on appeal is substantially different from the argument he presented to the trial court in his belated and amended Motion to Correct Errors. In his Motion to Correct Errors Appellant did not suggest to the trial court there was error in refusing to have him examined because he might have been found to be incompetent to stand trial. He asserts there that the denial was highly prejudicial to him because such an examination could have produced evidence that he, the appellant, is criminally sexually deviant and would merit different sentencing treatment. His claim on appeal, however, is that he should have been examined to determine whether or not he was competent to stand trial pursuant to Ind.Code § 35–5–3.1–1 (Burns Repl. 1979) (now repealed), even though the pleading does not state it is based on the statute and does not indicate that such finding is necessarily contemplated. The pleading filed by Appellant asked the court to appoint psychiatrists to

determine if his comprehension was sufficient to understand the nature of the charges and assist his attorney in the preparation of his defense, and, further, to examine him to determine whether he was legally of sound mind at the time of the commission of the offense. There is no allegation nor presentation of any evidence that the examinations would reveal either of the conditions to exist. The State properly points out it is not consistent with the provisions of Ind.R.Tr.P. 59 to allow Appellant to argue one thing to the trial court and something different on appeal. Since the grounds on which he raises this issue on appeal were not presented to the trial court, he has waived this issue pursuant to Rule 8.3(A)(7).

■ We further note, however, that no reversible error was committed by the trial court in denying the motion based on this suggestion. Ind.Code § 35–5–3.1–1 requires the trial judge to appoint two disinterested psychiatrists to examine a defendant to determine his competency to stand trial, "[i]f at any time before the final submission of any criminal case to the court or jury trying the same, the court, either from its own knowledge or upon the suggestion of any person, has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense." Here the trial judge had ample opportunity to observe the appellant and indicated to the parties that he saw nothing that justified his inquiring further on the subject. This Court stated in *Brown v. State*, (1976) 264 Ind. 484, 487, 346 N.E.2d 559, 560:

"The right to such a hearing is not absolute or automatic but is dependent upon the presence of reasonable cause to suspect that the defendant is incompetent to stand trial . . . [T]he trial judge concluded that there was no reasonable ground for believing the defendant to be insane or incompetent to stand trial and under these circumstances, he was not required to hold a hearing contemplated under the statute."

It is within the discretion of the trial judge to make this determination based on all the facts and circumstances before him and we will not disturb that judgment unless it appears there was an abuse of discretion. In addition to the observations made by the trial judge at the time he denied this motion, the record shows that the appellant took the stand and testified in his own behalf. His testimony reveals he was aware of all of the facts and circumstances regarding the charges against him and gave a different version, claiming consent by the victim, that belied any claim of incompetency. The trial judge did not err on this issue.

## IV

Appellant next contends that there was an insufficiency of the evidence in regard to the convictions for rape and robbery because there was no evidence to show that the sexual intercourse was accomplished through the use of force or the threat of force or that the robbery was perpetrated through force or putting a person in fear.

■ When reviewing the sufficiency of the evidence this Court will not weigh the evidence or determine the credibility of witnesses. Rather, we will consider only that evidence which is most favorable to the State, together with all logical and reasonable inferences to be drawn therefrom. The verdict will be upheld so long as there is sufficient evidence of probative value from which the jury could find the defendant guilty beyond a reasonable doubt. *Showecker v. State,* (1982) Ind., 432 N.E.2d 1340, 1342; *Willard v. State,* (1980) Ind., 400 N.E.2d 151, 160.

Ind.Code § 35–42–5–1 (Burns Repl. 1979) reads in pertinent part:

"A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) By using or threatening the use of force on any person; or

(2) By putting any person in fear; commits robbery, . . . ."

Ind.Code § 35–42–4–1 reads as follows:

"(a) A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:

(1) The other person is compelled by force or imminent threat of force;

. . . commits rape, a class B felony."

■ The testimony of the victim was more than sufficient to support the convictions. She testified in detail that the appellant forced his way into her apartment, slapped her and her daughter, and threatened to hurt her if she did not submit to his demands. She said the child was crying and shaking and was in fear. The victim testified she was in fear of being hurt and stated, following his assaults and threats, that she gave him the money thinking perhaps that was all he would do and that he would then leave. She testified he used a knife from the kitchen to force her to leave with him in her car. In addition, the victim submitted to intercourse because she was afraid the appellant would hurt her. These facts were sufficient for the jury to find the appellant guilty beyond a reasonable doubt.

## V.

Although no question was raised by Appellant on sentencing in his Motion to Correct Errors, both parties admit that the court failed to set out its reasons for increasing the penalties because of aggravating circumstances and also for imposing consecutive sentences. This Court remanded the cause to the trial judge, requiring him to state his reasons and re-certify the record to this Court. *Showecker v. State,* (1982) Ind., 432 N.E.2d 1340; *Alleyn v. State,* (1981) Ind., 427 N.E.2d 1095.

■ For the crimes of rape and confinement, the trial court gave the defendant the fixed ten year term and added ten years to each charge for aggravating circumstances. For robbery, a class C felony, the court gave the defendant the fixed term of five years and added three years for aggravating circumstances and for theft, a class D felony, the court gave the defendant the two year fixed term and added two years for aggravating circumstances. All of

these sentences were also ordered to be served consecutively. The trial court found in its written report to this Court that he fixed the additional terms and ordered them served consecutively because of the brutal manner in which the attack upon the victim was perpetrated and the fact that the attack took place in the presence of the victim's young daughter. He further indicated that there was no remorse upon the part of the appellant and, in fact, the appellant made threats in open court that he was going to assault the victim again. Although the written report by the trial judge is not as detailed as it might be, it is, nevertheless, sufficient under Ind.Code § 35–4.1–4–7 (Burns Repl. 1979) in consideration of the facts and circumstances presented at the trial. Furthermore, the sentences were not manifestly unreasonable considering the nature of this crime and the manner in which it was perpetrated. Ind.R. App.Rev.Sen. 2.

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.